42 So.2d 17

Ex parte MORRIS.

STATE v. MORRIS.

6 Div. 932.

Supreme Court of Alabama.

July 15, 1949.

Rehearing Denied Aug. 18, 1949

552

Hugh A. Locke, of Birmingham, for petitioner.

A. A. Carmichael, Atty. Gen., and Jas. T. Hardin and M. Roland Nachman, Jr., Asst. Attys. Gen., for the State.

**PER CURIAM.**

On denial of the writ of certiorari the court rendered the following memorandum opinion: "Certiorari denied upon the principle that the petition shows that this was direct contempt committed in the presence of the court, and that due process was afforded petitioner, and no error appears on the face of the record or that the evidence sought was not material. Ex parte Savin, 131 U.S. 267, 9 S.Ct. 699, 33 L.Ed. 150; Cooke v. United States, 267 U.S. 517, 535 [45 S.Ct. 390, 69 L.Ed. 767]; Newsum v. State, 78 Ala. 407."

It is deemed proper that the following opinion be delivered to further exposit the views of the majority.

Petitioner, Morris, having been duly summoned to appear before the grand jury

of Jefferson County as a witness in an investigation of alleged criminal activities of an Alabama corporation designated Federated Ku Klux Klan, Inc., appeared but refused to comply with a subpoena duces tecum to produce certain records of the organization as well as to identify its membership, conceiving that it was within his rights to withhold the same as Klan secrets. He was admittedly an officer of the organization and the official custodian of its records and was possessed of such information. On his refusal to identify the membership of the organization or to furnish a list thereof to the grand jury, he was then by said grand jury, accompanied by the prosecuting officers representing the state, presented in open court before the judge presiding, who had impanelled the grand jury, and the judge then and there ordered the said Morris to produce the names of the members of the organization and to comply with the request of the grand jury. This he again refused to do and stated as his reasons that he was an officer of the organization, was under oath of allegiance thereto and sworn not to disclose the identity of the members, which was a Klan secret he was not obligated to disclose. At this hearing the witness made no further objection or request. The court thereupon in open court overruled his objection and ordered him to give the names of the members of the organization and to return to the grand jury room and to give this evidence which the court held to be competent and relevant, and then and there in the presence of the court in open session and in the presence of the members of the grand jury and others, he refused so to do. The court then and there and in open court adjudged the witness guilty of contempt and sentenced him to imprisonment in the county jail until he should purge himself of the contempt by complying with the order.

The petition further shows that when the grand jury made its final report to the court and was discharged, the judge fixed the amount of the bond for the witness as provided by § 456, Title 7, Code 1940, authorizing the witness's discharge upon the execution of such bond, the bond being fixed in the amount of $500, payable and conditioned as provided by said section of the Code. This order of the court afforded Morris an open door to freedom if he desired to live within the law. The witness declined to make such bond and resumed his confinement in the county jail.

█ It clearly appears from the averments of the petition and the record of the court embodied therein that the court had jurisdiction of the subject matter and of the person, and acted within the bounds of the court's jurisdiction and authority and not in excess thereof. Ex parte Pearce, 111 Ala. 99, 20 So. 343; Newsum v. State, 78 Ala. 407; Ex parte Wheeler, Judge, 231 Ala. 356, 165 So. 74; Jones v. Jones, 249 Ala. 374, 31 So.2d 81; Ex parte Savin, 131 U.S. 267, 9 S.Ct. 699, 33 L.Ed. 150; Cooke v. United States, 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767.

█ The first duty of every citizen is allegiance to the constitution and laws of the state and nation and the lawful judgments and decrees of the courts. Ex parte Savin, supra. And this loyalty cannot be supplanted by self-assumed allegiance to a private fraternal or other corporation organized under the statutes of this state. Only privileged communications and facts made so by the law or lawful government regulations are protected from disclosure. The identity of the membership of said organization does not fall within such privileged class. The courts, when their jurisdiction is duly invoked, have authority to exercise visitatorial powers and inquire as to the acts of such corporation and keep them within the bounds of their lawful authority. Essgee Co. of China v. United States, 262 U.S. 151, 43 S.Ct. 514, 67 L.Ed. 917; In re Verser-Clay Co., 10 Cir., 98 F.2d 859, 120 A.L.R. 1102; Wilson v. United States, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771, Ann.Cas.1912D, 558; Birmingham Traction Co. v. Birmingham Ry. & Elec. Co., 119 Ala. 129, 134, 24 So. 368, 43 L.R.A. 233.

Putting aside for the moment the constitutional question of whether or not Morris was accorded procedural due process, it should be observed that the whole court

is in agreement on certain propositions argued for error, to wit:

■ First, that in the investigation of the Federated Ku Klux Klan, Inc., an Alabama corporation, as regards its alleged complicity through its membership in committing acts of terrorism, floggings, etc., the grand jury had the lawful right to know the officers and members of such organization and it was not within the rights of the petitioner, who admitted being an officer of the organization possessed of such information, to withhold it from the grand jury. The grand jury had the right to make the investigation of this Alabama corporation, Wilson v. United States, supra; Essgee Co. of China v. United States, supra; and, the information called for not being within the exceptions granting the right to refuse because self-criminatory etc., the materiality vel non of such information was a matter within the discretion of the grand jury. Blair v. United States, 250 U.S. 273, 39 S.Ct. 468, 63 L.Ed. 979.

Second, that the procedure followed is authorized by statute and has long ago been approved by this court. Code 1940, Title 13, § 2, par. 5; Newsum v. State, supra.

Third, that the contumacious witness could be required to report the matter to the next session of the grand jury. Code 1940, Title 7, §§ 455, 456; Title 13, § 2, supra.

■ Fourth, that nothing in the procedure indicates any conflict · with the right of free assemblage guaranteed under the First Amendment. The contention to the contrary impresses us as wholly fallacious. No such right was invoked by the witness or denied by the court.

The Newsum case, Alabama, is factually the same as regards the procedure to deal with the refusal of a witness to respond to lawful interrogations of the grand jury and it was there held, Chief Justice Stone writing, that for the failure of the witness to answer material questions propounded to the witness by the grand jury and in open court by the court authorized imprisonment of the witness until he should answer.

The only point of disagreement of the two dissident justices, and one of the propositions contended for by petitioner's distinguished counsel, is that the contempt was indirect and not a direct one in the presence of the court and that, though civil in nature, under In re Oliver, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682, the court was without power to visit summary punishment on the recalcitrant witness; that it was necessary that a written charge be preferred against him, the case docketed and a time set for hearing. It is our opinion that the position is demonstrated to be clearly untenable both under authority of our own Newsum case, supra, and under the authority of the federal case of Ex parte Savin, supra, reapproved in Cooke v. United States, supra, the Cooke case having beeen cited with · approval in the Oliver case.

As stated, this was a civil contempt to coerce obedience to the court's order and as regards such an infraction, it was observed in Ex parte Sellers, 250 Ala. 87, 88, 33 So.2d 349, 350, that "'it was not necessary for the court to abide by all the procedural safeguards which surround trials for crime' (United States v. United Mine Workers of America, supra [330 U.S. 258, 67 S.Ct. 677, 714, 91 L.Ed. 884]), and that the court had power summarily to coerce obedience to its orders and to subject defendant to such conditional sanctions as were necessary to compel obedience. United States v. United Mine Workers, supra."

■ There is no argument between us but that if the contempt is direct, that is, in the presence of the court and of such character as to disrupt the orderly administration of justice and such flagrant defiance of the person and presence of the judge before the public as, if not summarily dealt with, would result in demoralization of the court's authority before the public, the court is vested with the power of summary punishment for contempt. In re Terry, 128 U.S. 289, 9 S.Ct. 77, 32 L.Ed. 405; Savin, Cooke, and Oliver cases, supra.

It is not open to the slightest question but that the conduct of petitioner in refusing to respond to the demands of the

grand jury and later to the order of the court in open court in the presence of the grand jury was of that type of misconduct, if a direct contempt, as would authorize immediate action by the court.

So it seems to us the only question of disagreement is whether or not the contempt was in the presence of the court. We find a complete answer to this query in the Savin case, supra, where the misconduct was in the witness room adjoining the courtroom and in the corridor of the courtroom where the contemnor sought to deter a witness, subpoenaed in a pending trial then in progress, by intimidation and offer of bribery, from testifying in the case. When the matter was brought to the attention of the court the person was immediately brought before the judge, the facts presented to him in open court, and summary punishment was then imposed. The court in that case, speaking through Mr. Justice Harlan, held that the action of the witness, within the meaning of the statute authorizing punishment, was in the presence of the court. We quote the following pertinent statement from the opinion:

"* * * We are of the opinion that, within the meaning of the statute, the court, at least when in session, is present in every part of the place set apart for its own use, and for the use of its officers, jurors and witnesses; and misbehavior anywhere in such place is misbehavior in the presence of the court. * * *

"We are of opinion that the conduct of the appellant, as described in the final order of the district court, was misbehavior in its presence, for which he was subject to be punished without indictment," etc. 131 U.S. 277–278, 9 S.Ct. 702, 33 L.Ed. 150.

 Much more so was the contempt here in the presence of the court, since the grand jury was a part of the court. The court was in session, the judge presiding who adjudged petitioner for contempt having organized the grand jury. As stated in 17 C.J.S., Contempt, § 26, p. 36, in line with the principle announced in the Savin case, supra, "generally, contempt committed in any place set apart for the use of any constituent part of the court while in session * * * is deemed to have been committed in the presence of the court." For like authority see also 6 R.C.L. 492, § 5; 17 C.J.S., Contempt, supra, note 36, and pp. 86–87; United States v. Dachis, D.C., 36 F.2d 601; Lockett v. State, 145 Ark. 415, 224 S.W. 952; People v. Sheridan, 349 Ill. 202, 181 N.E. 617.

We do not think, therefore, the procedure shows an absence of due process. There was no request for a delay for any purpose or a request to be represented by counsel. The contempt was repeated by the petitioner in the presence of the judge and grand jury in open court. The record discloses no occasion for a formal trial or the introduction of any testimony nor was any request made therefor. There was no occasion, therefore, to cite Morris to appear before the judge when he was already in his presence repeating the contempt. He understood clearly the character of the charge against him and repeated his refusal to comply. No more formal procedure was necessary and as we view it, the record fails to disclose a violation of the considered section of the Fourteenth Amendment.

We do not regard the Oliver case to be in any way governing of the question here considered. There a one-man grand jury (consisting of the judge himself) under Michigan law, in secret session, and not in open court, as prevailed in the instant case, summarily imprisoned a recalcitrant witness and the court, largely resting decision on the secrecy of the "star chamber" method of procedure, absent of any public demoralization of the court's authority, denounced the punishment as not having accorded the witness procedural due process. That case, however, took note of the fact that there was no "reason suggested why 'demoralization of the court's authority' would have resulted from giving the petitioner a reasonable opportunity to appear and offer a defense in open court to a charge of perjury or to the charge of contempt. The traditional grand juries have never punished contempts. The practice that has always been followed with recalcitrant grand jury witnesses is to take them into open court, and

that practice, consistent with due process, has not demoralized the authority of courts. * * *"—333 U.S. 277–278, 68 S.Ct. 509, 92 L.Ed. 682.

▇▇▇ In view of some argument that the grand jury had no right to engage in a "fishing expedition," we think it should be noticed that one of the major functions of a grand jury is to embark upon inquisitorial expeditions to ferret out crime. The grand jurors take oath that they "will diligently inquire [into], and true presentment make, of all indictable offenses given [them] in charge, as well as those brought to [their] knowledge, committed or triable within the county." Code 1940, Title 30, §§ 73, 74.

Our view is that the petition has been properly denied.

Writ denied.

BROWN, FOSTER, SIMPSON and STAKELY, JJ., concur.

LIVINGSTON and LAWSON, JJ., dissent.

LAWSON, Justice (dissenting).

Among other questions, the petition in this proceeding presents the following: Was the petitioner convicted of contempt of court and sentenced to imprisonment without being afforded due process of law as guaranteed to him by the due process clause of Section 6 of the Constitution of this state, and by the due process clause of the Fourteenth Amendment to the Federal Constitution.

The petition shows that petitioner was served with a subpoena duces tecum commanding him to produce before the Grand Jury of Jefferson County, Alabama, among other things, the roster or list of membership of the Federated Ku Klux Klan, Incorporated. Petitioner appeared before the said Grand Jury and admitted that he had in his custody a list or roster of the Jefferson County membership but refused to produce it when requested to do so by the Grand Jury. Whereupon petitioner was taken before Honorable Robert J. Wheeler, a judge of the Circuit Court of Jefferson County, Alabama, who had or-

ganized the Grand Jury. Judge Wheeler was informed of the fact that petitioner had refused to produce the list or roster of the Jefferson County membership. However no formal accusation was made. Petitioner was given no notice of any hearing to be held before Judge Wheeler, nor was opportunity afforded him to plead, answer or demur, or to have counsel in his behalf. Petitioner admitted in open court in the presence of Judge Wheeler that he had the list or roster of the Jefferson County membership in his possession but declined to produce it, even when so directed by the judge. Thereupon the petitioner was adjudged guilty of direct contempt and was ordered confined to the county jail of Jefferson County until such time as he purged himself thereof.

This petition involves the rights of the individual, Hugh Morris, the petitioner in this case. His rights as an individual must not be affected by the fact that he is a member and officer of an organization which has been accused of acts of terrorism and unlawfulness. Such acts, of course, cannot be condoned, but petitioner cannot be denied due process of law merely because of his membership in such an organization.

The Supreme Court of the United States in a comparatively recent case, In re Oliver, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682, treated at length the power of courts to punish for contempt of court. In that case it was said as follows: "Except for a narrowly limited category of contempts, due process of law as explained in the Cooke case requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation. The narrow exception to these due process requirements includes only charges of misconduct, in open court, in the presence of the judge, which disturbs the court's business, where all of the essential elements of the misconduct are under the eye of the court, are actually observed by the court, and where im-

mediate punishment is essential to prevent 'demoralization of the court's authority * * * before the public.' "

In view of the holding of the Supreme Court of the United States, as indicated above, I am constrained to the conclusion that the petitioner here was adjudged guilty of contempt and sentenced to imprisonment without being afforded due process of law. I do not believe that his refusal to deliver to the Grand Jury the list or roster of the organization of which he was an officer, although such refusal was in the presence of the court, is of that type of misconduct which unless immediate punishment was meted out would result in demoralization of the court's authority before the public.

The petition shows that petitioner refused to produce this list or roster because of his belief that the Grand Jury had no power or authority to require its production. Of course petitioner cannot usurp the powers of the Grand Jury nor of the courts. He cannot set himself up as the arbiter of what the Grand Jury is entitled to have before it in its investigation into criminal matters pending before it. However, punishment for such conduct must be in conformity with due process.

I realize, of course, that the dignity of the courts must be maintained and that there are certain types of misconduct which when committed in the presence of the court require immediate punishment. But I do not believe that the dignity or majesty of the court would have been in any wise impaired in this instance if the petitioner had been cited to show cause why he should not be held to be in contempt of the court and an opportunity given him to secure counsel and prepare his defense.

I reiterate that the petition in this case does not present for our consideration or determination any charge against the Ku Klux Klan. It simply presents the question as to whether or not an individual has been sentenced to imprisonment for contempt of court without being afforded due process of law as guaranteed to him by the state and federal constitutions. I am of the opinion that due process of law was not afforded petitioner, and for that reason alone I must respectively dissent from the conclusion reached by the majority of the court.

LIVINGSTON, J., concurs in the views expressed by Justice LAWSON.