91 So.2d 214

**Ex parte NATIONAL ASSOCIATION FOR the ADVANCEMENT OF COLORED PEOPLE, a Corporation.**

**In Re: The STATE of Alabama ex rel. John PATTERSON, as Attorney General of the State of Alabama,**

v.

**NATIONAL ASSOCIATION FOR the ADVANCEMENT OF COLORED PEOPLE, a Corporation.**

3 Div. 779.

Supreme Court of Alabama.

Dec. 6, 1956.

1. Ante, p. 49.

Arthur D. Shores, Birmingham, Fred D. Gray, Montgomery, and Robt. L. Carter, New York City, for petitioner.

**352**

On the date set to produce, the court granted the petitioner eight additional days within which to comply with its order.

Thereafter the court offered the petitioner additional time to produce the documents. In reply to the court's offer to grant additional time, counsel for petitioner stated in open court that additional time would not be required, that the petitioner would not produce the books, documents, and papers as ordered by the court and that it elected to stand on its decision not to bring the papers into court for inspection by the State.

As a result of petitioner's brazen defiance of the order of the court, the petitioner was adjudged in contempt of court and fined $10,000. The decree provided that in the event the petitioner failed to comply fully with the order to produce within five days from that date that the fine for contempt would be raised to $100,000.

On the last day that petitioner had to comply with the court's order or suffer the fine to be raised for refusing to comply, the petitioner offered to bring some of the documents into court, but refused to fully comply with the order to produce. This offer of partial compliance by the petitioner was not accepted by the court. Thereafter the court decreed that the fine be raised as indicated above.

This petition for writ of certiorari presents the single question, viz.: The legality vel non of the order of contempt.

The ultimate aim and purpose of the litigation is to determine the right of the state to enjoin petitioners from doing business in Alabama. That question, however, is not before us in this proceeding.

John Patterson, Atty. Gen., for respondent.

PER CURIAM.

The Circuit Court ordered the petitioner to bring certain books, documents and papers into court on a certain date for inspection by the State of Alabama in a cause filed by the Attorney General on behalf of the State against the petitioner.

On the petition for certiorari the sole and only reviewable order or decree is that which adjudges the petitioner to be in contempt. Certiorari cannot be made a substitute for an appeal or other method of review. Certiorari lies to review an

order or judgment of contempt for the reason that there is no other method of review in such a case. Ex parte Dickens, 162 Ala. 272, 50 So. 218, 220. Review on certiorari is limited to those questions of law which go to the validity of the order or judgment of contempt, among which are the jurisdiction of the court, its authority to make the decree or order, violation of which resulted in the judgment of contempt. It is only where the court lacked jurisdiction of the proceeding, or where on the face of it the order disobeyed was void, or where procedural requirements with respect to citation for contempt and the like were not observed, or where the fact of contempt is not sustained, that the order or judgment will be quashed.

 It is well to remember that "a proceeding for contempt is not a part of the main case, before the court, but is collateral to it, a proceeding in itself." Ex parte Dickens, supra. In the process of the trial in the main case there are ample remedies for review. Appeal lies from interlocutory decrees, such as those on demurrer to the bill, orders granting, or refusing temporary injunctions, orders sustaining or denying motions to dissolve or discharge. Tit. 7, §§ 754, 1057, Code of 1940.

 An order requiring defendant to produce evidence in a pending cause may be reviewed on petition for mandamus. Ex parte Hart, 240 Ala. 642, 200 So. 783. Hence, if petitioner felt itself aggrieved by the order requiring it to produce certain evidence, it should have sought to have the order reviewed by mandamus. Where a party to a cause elects not to avail of such remedies to test the validity of an order requiring him to do or refrain from doing a certain act and simply ignores or openly declines to obey the order of the court, he necessarily assumes the consequences of his defiance, and is remitted to the lone hope of having the reviewing court find and de-

clare the order of contempt void on its face. That is the status of petitioner here.

Here we do not have before us a decree on the equity of the bill, or a final decree granting relief to complainant, or, in fact, the decree granting a temporary injunction. All that we have presented to us is the order adjudging the petitioner to be in contempt, and as we will show that order is well sustained.

So, were the sanctions imposed upon petitioner for its willful contempt committed in the presence of the court within the court's lawful authority? We will first inquire whether the contempt in the instant case is in its nature civil or criminal.

 We approved the following definition of a civil contempt in Ex parte Dickens, supra:

"'A "civil contempt" consists in failing to do something, ordered to be done by a court in a civil action, for the benefit of the opposing party therein.'" 162 Ala. 276, 50 So. 220.

The distinction between civil and criminal contempts is thus stated in 12 Am.Jur., Contempt, § 6, p. 392:

"Criminal contempt proceedings are those brought to preserve the power and vindicate the dignity of the court and to punish for disobedience of its orders. Civil contempt proceedings are those instituted to preserve and enforce the rights of private parties to suits and to compel obedience to orders and decrees made for the benefit of such parties. The former are criminal and punitive in their nature, and the government, the courts, and the people are interested in their prosecution. The latter are civil, remedial, and coercive in their nature, and the parties chiefly interested in their conduct and prosecution are those individuals for the enforcement of whose private

**354**

rights and remedies the suits were instituted."

Criminal and civil contempts are defined in 17 C.J.S., Contempt, §§ 5 and 6, pp. 7, 8, to be as follows:

"A criminal contempt is conduct that is directed against the dignity and authority of the court, or a judge acting judicially; it is an act obstructing the administration of justice which tends to bring the court into disrepute or disrespect.

\* \* \* \* \* \*

"Civil contempt consists in failing to do something ordered to be done by a court in a civil action for the benefit of the opposing party therein, and is, therefore, an offense against the party in whose behalf the violated order is made. If, however, the contempt consists in doing a forbidden act, injurious to the opposite party, the contempt may be considered criminal."

We indicated our approval of both of the above quotations in Ex parte King, 263 Ala. 487, 491, 83 So.2d 241, 245.

We held the contempt to be criminal in the King case, 263 Ala. at page 490, 83 So.2d at page 245 because it was " '\* \* punishment for what has been done, and it committed petitioner to jail for a definite period of time.' " We further stated, 263 Ala. at page 491, 83 So.2d at page 245, "It seems to us that the penalty is for past disobedience rather than to compel obedience." Ex parte King, supra.

We also held the contempt to be criminal in Ex parte Hill, 229 Ala. 501, 158 So. 531, for the same reasons.

The petitioner insists that its contempt was criminal because the trial court used the word punishment in the decree. The Supreme Court in United States v. United Mine Workers of America, 330 U.S. 258, 297, note 64, 67 S.Ct. 677, 698,

91 L.Ed. 884, speaking of the use of the word punishment as indicating the type of contempt said: " 'punishment' has been said to be the magic word indicating a proceeding in criminal, rather than civil, contempt. \* \* \* But 'punishment' as used in contempt cases is ambiguous. 'It is not the fact of punishment, but rather its character and purpose \* \* \*.' Gompers v. Bucks Stove & Range Co., 1911, 221 U.S. 418, 441, 31 S.Ct. 492, 498, 55 L.Ed. 797." There were two fines in the United Mine Workers of America case. The fine assessed for past contumacy was held to be for criminal contempt; and the fine to coerce the union into future compliance with the court's order was held to be for civil contempt.

In the light of these principles it is clear to us that the fines in the instant case were for civil contempt. The decree adjudging the $10,000 fine said:

"Ordered, adjudged and decreed further that in the event the respondent fully complies with the court's order to produce within five days from this date, then it may move to have this fine reduced or set aside. However, in the event the respondent fails to comply fully with the order to produce within five days from this date, then it is ordered, adjudged and decreed that the fine for this contempt be $100,000.00." (Emphasis supplied.)

The $10,000 fine was coercive because it gave the petitioner a right to have the fine set aside after full compliance with the order to produce. The $100,000 fine was coercive because the petitioner had five days within which to comply with the court's order or to be fined said amount. Neither fine apparently was severe enough or the petitioner would have produced the documents within the time allowed instead of offering partial compliance with the court's order on the last day of grace.

The time given the petitioner in the instant case prior to assessing the larger fine was the same time given the union by the Supreme Court of the United States in modifying the civil contempt fine in the United Mine Workers of America case, supra. We quote from, 330 U.S. at page 305, 67 S.Ct. at page 702:

" * * * to pay a fine of $700,000, and further, to pay an additional fine of $2,800,000 unless the defendant union, *within five days* after the issuance of the mandate herein, shows that it *has fully complied* * * *." (Emphasis supplied.)

Our statutes limit punishment for contempt by the circuit court to five days in jail and a fine of fifty dollars. Title 13, §§ 9 and 143, Code of 1940. But our cases hold that the statutory limitations apply to criminal contempt and not to civil contempt. Ex parte King, supra; Ex parte Hill, supra; Ex parte Dickens, 162 Ala. 272, 50 So. 218.

The amount of the fine in the instant case, not being limited by statute, is within the sound discretion of the court and in the absence of an abuse thereof will not be disturbed. MacInnis v. United States, 9 Cir., 191 F.2d 157, certiorari denied, 342 U.S. 953, 72 S.Ct. 628, 96 L.Ed. 708; United States v. Landes, 2 Cir., 97 F.2d 378; Ex parte Hill, supra. The fine adjudged by the circuit court is not excessive.

We could well conclude here by ordering a denial of the writ and a dismissal of the petition, but will discuss briefly the merits of the order to produce so that the parties may know the views entertained by the court.

The petitioner argues that its belated offer to produce included everything except items number 2 and 8 as set out in its brief, and that it was not required to produce these. Items 2 and 8 are:

"2. All lists, documents, books, and papers, addresses and dues paid of all present members in the State of Alabama of the National Association for the Advancement of Colored People, Incorporated.

* * * * * *

"8. All lists, books, and papers showing the names and addresses of all officers, agents, servants and employees in the State of Alabama of the National Association for the Advancement of Colored People, Inc."

Assuming that the petitioner did offer to bring in for inspection by the State everything except the documents listed in items 2 and 8, could the court require the petitioner to disclose this information? We think so. The court held the information to be competent and relevant; and the petition shows that the court had jurisdiction of the petitioner and of the subject matter.

This court in holding that an officer of the Ku Klux Klan, Inc. was in contempt of court for failing to turn over a list of members of said organization when ordered to do so by the court, said:

"The first duty of every citizen is allegiance to the constitution and laws of the state and nation and the lawful judgments and decrees of the courts. * * * Only privileged communications and facts made so by the law or lawful government regulations are protected from disclosure. The identity of the membership of said organization does not fall within such privileged class." Ex parte Morris, 252 Ala. 551, 554, 42 So.2d 17, 20.

The Supreme Court of the United States recently upheld a contempt citation of a labor union official, for his failure to produce before a grand jury, union records "showing its collections of work-permit fees, including the amounts paid therefor and the *identity of the payors* * * *."

# 356

(Emphasis supplied). The court said, 322 U.S. at page 705, 64 S.Ct. at page 1254:

"The union and its officers acting in their official capacity lack the privilege at all times of insulating the union's books and records against reasonable demands of governmental authorities." United States v. White, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542.

The courts, when their jurisdiction is duly invoked, have authority to exercise visitatorial powers and inquire as to the acts of such corporations as the petitioner and keep them within the bounds of their lawful authority. Essgee Co. of China v. United States, 262 U.S. 151, 43 S.Ct. 514, 67 L.Ed. 917; In re Verser-Clay Co., 10 Cir., 98 F.2d 859, 120 A.L.R. 1098; Wilson v. United States, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771, Ann.Cas.1912D, 558; Ex parte Morris, supra.

The guaranties found in the Federal and State Constitutions against compulsory self-incrimination do not extend to a private corporation so as to justify it in refusing, on the ground that it might be thereby incriminated, to comply with a lawful order directing it to produce corporate records in legal proceedings. United States v. White, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542; Wilson v. United States, supra; Hale v. Henkel, 201 U.S. 43, 26·S.Ct. 370, 50 L.Ed. 652; United States v. Lawn, D.C.S.D.N.Y., 115 F.Supp. 674.

It is clear, therefore, that the circuit court, in equity, had authority to order the petitioner to disclose names, addresses and dues paid by petitioner's members, officers, agents and employees and that the petitioner could be held in contempt of court for non-compliance with the court's order to produce.

Writ denied and petition dismissed.

All the Justices concur.