[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 725 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 726 
Petitioner was adjudged guilty of contempt of court for "disruptive misconduct in open court in the courtroom during judicial proceedings, i.e., abusive and obscene language to a female officer of the court", and was sentenced to five days confinement in the Morgan County Jail and fined fifty dollars.
On December 2, 1976, a petition for a writ of certiorari was transferred from the Court of Civil Appeals to the Supreme Court of this state. The Supreme Court granted the writ and this case was submitted on February 15, 1977. On July 6, 1977, the case was transferred to this court on a determination by the Supreme Court that this court has jurisdiction.
Essentially there are two questions which must be answered on this appeal: (1) Did the petitioner's use of abusive language to the court reporter constitute contemptuous conduct, and (2) were due process requirements met in the determination of petitioner's guilt by the lower court.
On November 2, 1976, Ms. Lesa Nelson was acting as a court reporter for Judge K.J. Griffith who had been appointed to assist Judge C. Bennett McRae in the Morgan County Court. According to Ms. Nelson, Judge Griffith had left the courtroom to make a phone call. Because the other court reporter had also left the courtroom, Ms. Nelson remained because she thought the judge "might want something taken".
While sitting in the courtroom, Ms. Nelson noticed the petitioner come up to her through the swinging doors near where the jury box was located. Although it does not appear in the transcript of the testimony, the petition for writ of certiorari avers that the petitioner was a venireman duly called to serve in the Morgan County Court for the week of November 1, 1976. Ms. Nelson stated that the petitioner had previously complained to Judge Griffith about all the delays, observing that his time was valuable.
Petitioner told Ms. Nelson that he had been noticing her ever since he came into court and he remarked that she was pretty. He stared at her chest and stated that he noticed she had freckles on her chest. Ms. Nelson put her hand on her chest as she felt uncomfortable. Petitioner then stated, "Do you have freckles on your titties?" Although Ms. Nelson explained that was personal, petitioner insisted on an answer. Ms. Nelson told him it was none of his business and then began to explain why court took so long, apologizing to him for any inconvenience.
Petitioner then stated to Ms. Nelson how she was trying to change the subject, stating, "Aren't you going to answer me." Petitioner continued by inquiring, "Would you scream if I leaned over and kissed you?" When Ms. Nelson responded "Yes", petitioner stated, "Well, I am and you're going to have to scream." At that point, petitioner leaned over and she pushed him away. He told her that "I want to give these people out here — amuse them while they are having to wait." After that comment, Ms. Nelson left the courtroom and told what had happened to Judge McRae's secretary. Ms. Nelson also stated that the petitioner told her he wished that she had been convicted of a crime when he was on the jury because he would let her go.
Judge McRae then brought the petitioner into his chambers and informed petitioner that:
 ". . . the purpose of me having you come in my office is to consider if I should hold you in contempt of court and, secondly, to consider whether I should *Page 727 
report your actions, if it has been improper, to the County Solicitor or the District Attorney or possibly the Sheriff, and to see if there are any actions that should be taken that would be for them to determine."
The petitioner was given an opportunity to obtain counsel and to explain his conduct or his version of what had happened. Petitioner admitted knowledge of the remarks and conduct the judge had reference to but refused to tell Judge McRae what those comments were. Petitioner was then taken to the Court Reporter's office. Ms. Nelson was brought into the judge's chambers and examined by Judge McRae as to the remarks and conduct of the petitioner. Although this proceeding was reported it does not appear that Ms. Nelson was under oath. After Ms. Nelson related the events to Judge McRae, the proceedings moved to the courtroom. The court reporter read to petitioner the testimony of Ms. Nelson.
Upon hearing Ms. Nelson's testimony the petitioner admitted his guilt.
 "THE COURT: Or you want to ask anything else? Is there anything you don't understand?
 "MR. CARROLL: No, sir. I just want to pay the fine, or go to jail, or whatever the hell you want to do."
The petitioner is fifty years old and an admitted alcoholic. He stated that he had had something to drink that morning as he had every morning but there was no way he could judge how much he had had to drink.
At this stage in the proceedings, Judge McRae again gave petitioner the opportunity to secure counsel. He also advised him of the maximum punishment for contempt. After briefly conferring with Sheriff Ward the petitioner again confessed his guilt. Judge McRae then sentenced petitioner to five days incarceration in the Morgan County Jail and fined him fifty dollars.
 I
The initial question this court must answer is whether the conduct of the petitioner in using vulgar language to the court reporter in the courtroom constitutes contempt where the court is in session but the judge is temporarily absent.
Contempt is divided into four classes: (1) Civil or (2) criminal, (3) direct or (4) constructive. The distinction between civil and criminal contempt lies primarily in the purpose for which the proceeding is brought and the sanction is imposed. Civil contempt sanctions seek to compel or coerce compliance with orders of the court in the future, Ex parteAbercrombie, 277 Ala. 479, 172 So.2d 43 (1965); Ex parte King,263 Ala. 487, 83 So.2d 241 (1955); Ex parte Hill, 229 Ala. 501,158 So. 531 (1935); and in failing to do something, ordered to be done by a court in a civil action, for the benefit of opposing counsel. Ex parte National Ass'n for Adv. of ColoredPeople, 265 Ala. 349, 353, 91 So.2d 214 (1956). Criminal contempt sanctions are imposed to punish for an act of past disobedience, to preserve the power and vindicate the dignity of the court, and to punish any act which is in disrespect of the court or tends to obstruct the administration of justice, or which tends to bring the court into disrepute. Ex parteSeymore, 264 Ala. 689, 89 So.2d 83 (1956); Dangel, Contempt, p. 3-4.
The petitioner was apparently a venireman called to jury duty in the Morgan County Court. The record only reveals that while some type of proceedings were being conducted in a civil case in the county court, the judge left the courtroom to make a telephone call. During his absence, petitioner made some remarks to the court reporter which have previously been set forth in this opinion. The language used by petitioner may very well have been obscene and profane within the meaning ofDavidson v. State, 19 Ala. App. 77 at 78, 95 So. 54 (1923) defining "obscene" as that which is offensive to chastity and modesty, and Slaughter v. State, 47 Ala. App. 634 at 637,259 So.2d 840, cert. denied, 288 Ala. 751, 259 So.2d 845 (1972) defining "profane" as to vulgarize and to make offensive to good taste. Title 14, § 11, Code of Alabama 1940 condemns the use of abusive, insulting, or obscene language in the presence of a girl or woman *Page 728 
and attaches criminal sanctions to such conduct. Thus the petitioner may be guilty of a misdemeanor carrying a fine of two hundred dollars and a term of imprisonment in the county jail for up to six months.
We have carefully considered the nature of petitioner's conduct and conclude that it tended to diminish or impair the respect due to judicial tribunals and in particular the county court of Morgan County. Petitioner's conduct was not a mere private conversation or flirtation with a female court reporter. Ms. Nelson stated that in attempting to kiss her the petitioner declared:
 "`I want to give these people out here' — something to the effect, `amuse them while they are having to wait.'"
The statements and conduct of the petitioner were not only a personal affront to the court reporter who was "trying to do her job" but an attempt by the petitioner to entertain the people in the courtroom during the judge's absence.
Not only was petitioner's conduct in disrespect of the court but his conduct did, in fact, disturb, obstruct and delay the administration of justice and orderly proceedings of court in the sense that Ms. Nelson, who was waiting in the courtroom because the judge "might want something taken down" had to leave to escape petitioner's unwarranted antics and unwanted attention. Such abuse of court personnel and forum cannot be tolerated.
 II
Having determined that petitioner's conduct is contemptuous, we must next consider whether the actions of the judge in ascertaining petitioner's guilt of contempt were correct and in accordance with constitutional and due process standards. Before we can proceed to such a determination we must first ascertain whether petitioner's contemptuous conduct constitutes a direct or a constructive (indirect) contempt.
The distinction between direct contempt (punishable without notice or hearing) and constructive contempt (punishable only upon notice and hearing) involves more than a mere geographical separation.
 "Three elements must coalesce in order to remove a contempt from the general category of `constructive' to the instantly punishable class of `direct' contempt: (1) The contempt must be committed in the actual physical presence of the court; (2) every element of the contempt must be within the personal knowledge of the judge; and (3) the contempt must require immediate vindication, making delay an unfeasible alternative." P.S. McKinney, 26 Alabama Law Review 655 at 680, The Contempt Power in Alabama State Courts; Ex parte Morris, 252 Ala. 551, 42 So.2d 17 (1949).
Applying these criteria to this case, we find that (1) the contempt was committed "in presence of court" because it was committed in the courtroom itself while court was in session. See Ex parte Morris, 252 Ala. 551, 42 So.2d 17 (1949) for a definition of the phrase "in presence of court". (2) However all the facts necessary to constitute the contempt were not within the personal knowledge of the judge and a witness was necessary to inform him of the details of the misconduct. Courts may summarily punish for direct contempt because the personal knowledge of the judge in whose presence the act was committed takes the place of evidence. Ex parte Tarpley,53 Ala. App. 363, 369, 300 So.2d 401, 406, affirmed 293 Ala. 137,300 So.2d 409; Brutkiewicz v. State, 280 Ala. 218,191 So.2d 222 (1966). (3) We do not consider the conduct of the petitioner to be in "such flagrant defiance of the person and presence of the judge before the public as, if not summarily
dealt with, would result in demoralization of the court's authority before the public." Ex parte Morris, 252 Ala. 551,555, 42 So.2d 17, 21 (1949); In re Oliver, 333 U.S. 257, 275,68 S.Ct. 499, 92 L.Ed. 682 (1948). Based upon this analysis, it is our conclusion that petitioner's conduct constitutes constructive contempt.
There are no rigidly fixed procedures which contempt prosecutions must follow in Alabama. Hunter v. State, *Page 729 251 Ala. 11, 13, 37 So.2d 276, 278 (1948). Therefore the only procedural principles which the courts must adhere to in contempt proceedings are the constitutional guarantees of the Federal and Alabama Constitutions. The Supreme Court of Alabama and of the United States have each held that a proceeding for indirect contempt requires that the accused be afforded due process of law. Tarpley, supra; also Ex parte Bankhead,200 Ala. 102, 75 So. 478 (1917); Hunter v. State, 251 Ala. 11,37 So.2d 276 (1948); Cooke v. United States, 267 U.S. 517,45 S.Ct. 390, 69 L.Ed. 767 (1925). Where an individual is charged with indirect or constructive contempt due process requires that he be given notice of the charges and a reasonable opportunity to meet them, including the assistance of counsel, if requested, the right to call witnesses and confront his accuser, and the right to give testimony, relevant either to the issue of complete exculpation or extenuation of the offense and in mitigation of the penalty imposed. Hunter, supra;Seymore, supra; Bankhead, supra; In re Oliver, 333 U.S. 257,68 S.Ct. 499, 92 L.Ed. 682 (1948).
In Alabama, a written accusation is essential to initiate an indirect contempt proceeding. International Brotherhood ofElectrical Workers, Local 136 v. Davis Construction Engineers, Inc., Ala., 334 So.2d 892 (1976); Hunter, supra;Tarpley, supra. A constructive contempt prosecution may be initiated by issuing a warrant of arrest requiring the accused to be held and be heard on the charge. A warrant must be supported by an oath or affirmation which affords probable cause as required by § 5 of the Constitution of Alabama. Alternatively, a constructive contempt proceeding may be begun by issuing a citation or rule nisi to the contemptor to appear before the issuing court and show cause why he should not be held in contempt. If a citation or rule is employed, no affidavit would be required. Tarpley, supra,53 Ala. App. at 369-370, 300 So.2d 401; Robertson v. State, 20 Ala. App. 514,104 So. 561 (1924); Hunter, supra; Atkins v. State, 34 Ala. App. 101, 40 So.2d 444 (1948), cert. denied, 252 Ala. 227,40 So.2d 446 (1949).
While neither of these initiation procedures were followed in this case the petitioner did receive actual notice of the charges against him — but only at the time of the hearing which was approximately thirty minutes after the conduct was committed. However the petitioner's conviction of contempt must be reversed on other grounds. Where the accused is not afforded the right and opportunity to confront and cross examine his accuser in a hearing to determine his guilt or innocence of a charge of constructive criminal contempt he is denied due process of law. Oliver, supra; Seymore, supra; Hunter, supra. In this proceeding the petitioner's liberty and freedom were at stake. Therefore the question of due process was essential.Seymore, 264 Ala. at 692, 89 So.2d 83. In view of our conclusion that the petitioner was denied certain constitutional rights and safeguards his admission of guilt is of no consequence. To hold otherwise would be to rule that a denial of due process of law constitutes harmless error in view of the subsequent confession of guilt by the accused. Such a doctrine is repugnant and hostile to the concept of basic and fundamental rights under which our criminal justice system operates.
In reversing petitioner's conviction because he was not afforded his constitutional rights of due process we are careful not to rebuke or level any criticism against Judge McRae. Petitioner's conduct was as disturbing to him as it is to this court. To tolerate such behavior would turn the courtroom into a jester's stage where fools perform. In his zeal to maintain the dignity of his court and protect it from abuse and scorn, Judge McRae unwittingly but in good faith and with the highest of motives committed another wrong.
In view of our conclusion that the petitioner was not afforded due process of law, his conviction for contempt is reversed. These proceedings are remanded to the county court of Morgan County with directions that new proceedings for contempt be instituted against the petitioner. *Page 730 
A warrant of arrest with supporting affidavit or a citation or rule nisi should be issued for the petitioner to appear and show cause why he should not be held in contempt. The warrant or citation should set forth the charge and allow the petitioner adequate and reasonable time to prepare a defense. While petitioner is not entitled to a jury trial on this issue, the contempt should be prosecuted by the District Attorney's Office with a county judge sitting as the trier of fact. All witnesses should be placed under oath or affirmation and petitioner should be given the opportunity to cross examination. Petitioner is entitled to representation by counsel if requested.
REVERSED AND REMANDED.
All the Judges concur.