We granted the writ of certiorari in this action to dispel the existing confusion as to the proper appellate jurisdiction for review of contempt proceedings and to determine whether the contemptuous conduct in question was indirect or direct criminal contempt.
The instant action stems from a domestic relations proceeding. The following order entered by Circuit Judge Joe G. Barnard, of the 10th Judicial Circuit, Jefferson County, who presided over the proceeding, provides the factual background:
 "This cause coming on to be heard and the testimony of some 16 witnesses being taken in open court it is the finding of the court after having all witnesses sworn and having testified:
 "(1) That while this domestic relations hearing was progressing and while the court was seeking to interview the minor child of the parties with counsel for both parties being present in chambers,
 "(2) An altercation broke out in the hallway adjacent to the chambers and the court room with attendant screaming and confusion which interrupted proceedings and made the further court action impossible.
 "(3) On stepping from the chambers into the hallway, the undersigned judge viewed all 16 or 17 parties involved in a pushing, struggling melee.
 "(4) That upon taking testimony the facts following are found:
 (A) That the defendant in this action Sandra Hill Tetter whose name is otherwise unknown, did verbally accost the defendant Billy Wayne Hill and did hit or push him.
 (B) That the defendant Billy Wayne Hill did then slap the defendant Sandra Hill Tetter in the head with his hand or fist.
 (C) That other persons jumped on and between these two combatants causing a loud roll and turmoil.
 (D) That as a result of the altercation two of the said witnesses were hospitalized as a result of seizures and for nervous condition aggravated by the said altercation between these two defendants.
 (E) That further court proceedings in this matter are disrupted and made impossible by the actions of these two defendants. *Page 1048 
 (F) That the defendants are hereby adjudged to be in direct criminal contempt of this court.
 (G) That after having heard testimony of all witnesses in open court in the presence and hearing of the defendants and in open court, the court after the finding of contempt, hereby sentences the defendants and each of them to serve 5 days in the county jail.
"Done and Ordered this 2nd day of December."
Following the entry of the order, Sandra Hill Tetter filed in the Court of Criminal Appeals a motion to vacate or to stay execution of the judge's order. After a hearing, the Court of Criminal Appeals issued an order setting aside and holding for naught that order; ordered Mrs. Tetter released from custody; remanded the cause for a hearing on the issue of contempt; directed that Mrs. Tetter be represented by counsel, and ordered a full record of the hearing be forwarded to the Court of Criminal Appeals before any further action was taken in the matter.
Thereafter, the State filed an application for rehearing with the Court of Criminal Appeals and the application was denied.Ex parte Tetter, 358 So.2d 1043 (Ala.App. 1977). From that decision, the State petitioned this court to grant writ of certiorari.
Two issues are presented on review:
I. Whether the Court of Criminal Appeals was the proper appellate court to review the contempt order in this matter?; and,
II. Did Judge Barnard err in finding Mrs. Tetter to be in direct criminal contempt?
 I. Appellate Jurisdiction
The issue pertaining to this aspect of our review was recently answered in Ex parte Preston, 356 So.2d 640 (1978) [12 ABR 883 (1978)], where Justice Faulkner, writing for a unanimous court, said:
 "We hold that because the Court of Criminal Appeals has no appellate jurisdiction over civil matters, it, likewise, has no jurisdiction over contempt proceedings arising out of civil matters * * *"
It is undisputed the contempt order entered here evolved from a civil matter: domestic relations (child custody). We see no need to elaborate on this point any further. However, we do deem this an appropriate opportunity to expressly overrule this court's prior decision in Musgrove v. United States Pipe Foundry Co., 290 Ala. 156, 274 So.2d 640 (1972), holding the appellate jurisdiction of a criminal contempt conviction to lie in the Court of Criminal Appeals regardless of the nature of the underlying matter.
On the basis of the above, we hold the Court of Criminal Appeals was without jurisdiction to review the contempt order of Judge Barnard in this case. However, under this court's inherent supervisory power over all of the courts of this state, we have no hesitancy in reviewing the decision of the Court of Criminal Appeals in this case rather than transfer the review of the case to the Court of Civil Appeals. Constitution
of Alabama, 1901, Amendment No. 328, § 6.02 (b).
 II. Indirect or Direct Criminal Contempt
A complete disposition of this action requires an examination of whether the judge was correct in finding Mrs. Tetter in direct criminal contempt. Hence our next consideration.
It is conceded that this action is a case of criminal contempt. Criminal contempt is:
 "* * * imposed to punish for an act of past disobedience, to preserve the power and vindicate the dignity of the court, and to punish any act which is in disrespect of the court or tends to obstruct the administration of justice, or which tends to bring the court into disrepute. * *" Carroll v. State, 350 So.2d 723 (Ala.App. 1977). *Page 1049 
However, the parties disagree as to whether or not the contemptuous conduct in question constitutes an indirect (constructive) or direct contempt.
The distinction between the two is drawn as a basis for procedural differences in applying a remedy. If the contemptuous conduct is determined to be a direct contempt, punishment is imposed without notice of hearing. On the other hand, if found to be an indirect contempt, punishment can be imposed only upon notice and hearing. See Carroll, supra. Mrs. Tetter contends the contempt was indirect; the State argues it was direct.
In Ex parte Tarpley, 53 Ala. App. 363, 300 So.2d 401 (1974), aff'd 293 Ala. 137, 300 So.2d 409 (1974), Judge Harris, writing for a majority of the Court of Criminal Appeals, aptly summarized the constitutional procedures to be utilized when remedying an indirect contempt:
 "* * * a person alleged to be in contempt of court [shall] be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either in defense or explanation.", and a direct one:
 "* * * a distinguishable category of circumstances [exist] where the above procedures are not mandatory. The excepted instances include charges of misconduct, in open court, in the presence of the judge, which disturbs the court's business, where all of the essential elements of the misconduct are under the eye of the court, are actually observed by the court, and where immediate punishment is essential to prevent demoralization of the court's authority before the public. * * * if some of the essential elements of the offense are not personally observed by the judge and he must depend upon statements made by others to supply his knowledge as to such essential elements, due process requires reasonable prior notice and the opportunity to be heard in person and with his witnesses at a fair hearing." (emphasis added)
These procedures raise the following decisive issue in determining whether contempt is indirect or direct: Were all of the essential elements of the contemptuous misconduct under the "eye" of the court? We think not.
The contemptuous conduct in question involved about sixteen or seventeen persons. The judge, in his findings, stated that upon stepping from his chambers into the hallway, he observed all sixteen or seventeen persons involved in the melee. How could he possibly, from this observation, determine which parties were responsible for the disturbance. The answer is simple, the judge had to "* * * depend upon statements made by others (the persons involved) to supply his knowledge as to such essential elements * * *," as evidenced in his contempt order. Thus, he did not have under his eye all the essential elements of the misconduct.
Summary punishment is allowed in those exceptional cases, direct contempts, because the personal knowledge of the court in whose presence the act was committed takes the place of evidence. Tarpley, supra, Carroll, supra. The judge's incomplete personal knowledge here, could not supply the needed evidence that would warrant denying Mrs. Tetter due process of law. Had his personal knowledge been complete there may have been no need to take testimony. Whether Mrs. Tetter was responsible for the disturbance was not within the judge's personal knowledge from what he observed.
We hold this was an indirect criminal contempt and the judge was required to afford to Mrs. Tetter due process of law (notice of the charges against her and a hearing) before imposing punishment.
In light of the foregoing, this action is remanded to the circuit court so that Mrs. Tetter may be advised of the charges against her and given a proper hearing in accordance with the requirements of due process as stated in cases of indirect contempt. For a detailed explanation of the proper procedures see Carroll, supra, and *Page 1050 Ex parte Seymore, 264 Ala. 689, 89 So.2d 83 (1956).
REVERSED AND REMANDED.
TORBERT, C.J., and BLOODWORTH, MADDOX, FAULKNER, JONES, ALMON, SHORES and BEATTY, JJ., concur.