YATES, Presiding Judge.
This is a child-custody modification case. The parties were divorced on October 10, 1996. Two children were born of the marriage, a son, born in 1994, and a daughter, *832 born in 1996. The trial court entered an order on issues involving child custody, visitation, and child support on April 7, 1997; in that order the court awarded the mother full care, custody, and control of the parties’ minor children, subject to certain rights of visitation by the father. In 1998, the mother petitioned to modify the father’s visitation rights, alleging that the children had been sexually abused while they were visiting the father; the father moved to hold the mother in contempt. On October 13, 1998, the court issued an order denying the mother’s petition and the father’s motion.
On August 3, 1999, the mother moved for an emergency ex parte order, alleging that the daughter had been sexually abused during a visit with the father and requesting a suspension of the father’s visitation rights. On the same day, the court granted the mother’s request and set the matter for a hearing.
On August 12, 1999, the father petitioned to modify custody of the children, arguing that there had been a material change in circumstances because of the mother’s willful and intentional breach of the terms and conditions of the court’s previous orders, among other things.
Following an ore tenus proceeding, the court, on January 21, 2000, entered an order requiring the parties to undergo forensic evaluations and took the matter of the father’s visitation under advisement. On April 4, 2000, the court set the case for a hearing on May 8, 2000, at which time the court was to rule on the matter of visitation. Instead, however, the parties agreed to submit to family counseling. On May 22, 2000, the court ordered that the mother undergo a psychological evaluation; that the parties and their children begin weekly family counseling; and that a hearing be set for August 14, 2000.
On June 6, 2000, the father moved to alter the May 22, 2000, order and to have a licensed psychiatrist appointed for the children. On August 28, 2000, after a meeting with the parties in chambers, the court ordered the father to undergo a forensic examination and to meet with Julie Eth-ridge, a licensed professional counselor; that order stated that a “hearing will be set for final disposition upon motion of either party.”
In a letter addressed to the trial judge, dated August 29, 2000, Ethridge submitted a “proposed treatment/reunification plan for the children and their father.” She wrote, “[A]t the present time, I would not feel comfortable ethically to recommend any unsupervised visitation between the father and the children.”
On January 26, 2001, the father moved to set the cause for a hearing to review visitation. Following an ore tenus proceeding on April 2, 2001, at which the mother failed to appear, the court, on April 4, 2001, entered a default judgment against the mother and granted custody of the children to the father, allowing the mother supervised visitation. The court also held the mother in contempt for violating its previous orders regarding visitation and reunification of the minor children with the father. On the same day, the mother moved to set aside the default judgment; the court scheduled a hearing for May 1, 2001. On April 5, 2001, the mother moved to stay the enforcement of the default judgment pending the hearing; however, the court denied the motion.
On April 6, 2001, the father moved to hold the mother in contempt, alleging that she had absconded out of state with the children and, as a result, that the children were in the custody of child-protection services in Tennessee. The court set the father’s motion for hearing for May 1, 2001.
*833 On May 1, 2001, the court held a hearing on the mother’s motion to set aside the default judgment and on the father’s new motion for contempt. On June 22, 2001, the mother filed a brief in support of her motion to set aside the default judgment. However, the court ordered the brief stricken, because the hearing had already been held. The record reflects that the court failed to rule on the mother’s motion to set aside the default judgment; therefore, it was denied by operation of law. We note that the trial court also faded to rule on the father’s new contempt motion. On or about May 24, 2001, the mother appealed.[1]
The mother argues that the trial court erred in failing to set aside the default judgment. We agree.
“One primary principle of the Alabama Rules of Civil Procedure is that the parties to an action should be afforded a prompt and fair trial upon the merits. Oliver v. Sawyer, 359 So.2d 368 (Ala.1978). Inherent in this principle is that default judgments are not favored, and, while the trial court has discretion to grant such judgments, the exercise of discretion should be resolved in favor of the defaulting party where there is doubt as to the propriety of a default judgment. Welch v. G.F.C. Credit Corp., 336 So.2d 1346 (Ala.Civ.App.1976). Thus, in determining whether to grant or deny a motion to set aside a default judgment, a trial court should exercise its broad discretionary powers with liberality and should balance the equities of the case with a strong bias toward allowing the defendant to have his day in court. Kirtland [v. Ft. Morgan Auth. Sewer Serv., Inc., 524 So.2d 600 (Ala.1988)]. Our Supreme Court, in Kirtland, established three factors that a trial court should consider in exercising its broad discretionary authority pursuant to Rule 55(c), [Ala. ]R. Civ. P.: T) whether the defendant has a meritorious defense; 2) whether the plaintiff will be unfairly prejudiced if the default judgment is set aside; and 3) whether the default judgment was a result of the defendant’s own culpable conduct.’ Kirtland at 605.
“In determining whether a defendant has a meritorious defense, he need not satisfy the trial court that he would necessarily prevail at a trial on the merits, but only that he is prepared to present a plausible defense. See Ex parte Illinois Central Gulf Railroad Co., 514 So.2d 1283 (Ala.1987). The defense must be of such merit as to allow the trial court to reasonably infer that allowing the defense to be litigated could foreseeably alter the outcome of the case. Hannah v. Blackwell, 567 So.2d 1276 (Ala.1990).”
Hutchinson v. Hutchinson, 647 So.2d 786, 788 (Ala.Civ.App.1994).
During a three-day hearing in January 2000, the court heard much testimony regarding the alleged sexual abuse of the parties’ then three-year-old daughter. The mother testified that the children visited with the father from July 3,1999, until July 17, 1999. She stated that when her daughter returned home from that visit she “called me into the bathroom crying, very upset, and I asked her what was wrong and she said that her ‘foo-foo’ hurt *834 and it was bleeding.” The mother testified that she saw blood on the toilet paper, on the bathing suit that her daughter had been wearing, and on her panties. She further stated that she “could see the blood on her vaginal area-” The mother testified that she took the daughter to the emergency room, where she was examined by John H. Ploussard, M.D. Dr. Ploussard testified that on July 18, 1999, he examined the child at the Hartselle Hospital emergency room and that after the examination he contacted DHR. He testified that the child told him that “[my stepmother] put her finger in my ‘foo-foo’.” He further stated that the child “had a small hematoma ... and an abrasion ... in the labia region,” that her “hymenal ring was intact,” but that she had a “small tear on the left inferior border of the hymenal ring from which she had been bleeding.” The doctor testified that in his expert opinion, the child had been sexually abused.
Valerie Barnett, the attending emergency room nurse, testified that the child told her that her stepmother “hurt her with a washcloth” and that “her dad had put his fingers in her bottom and her brother’s bottom.” The nurse further stated that she observed “blood smears on the inside of [the child’s] legs and the external labia.”
Linda Cordisco, a licensed professional counselor specializing in child sexual abuse at the Children’s Advocacy Center in Huntsville, testified that she performed a forensic evaluation on the child, during which the child “stayed very consistent,” identifying the father as the perpetrator of the sexual abuse. Cordisco testified that, in her opinion, the child had been sexually abused by the father.
The mother further testified that since the father’s visitation had been interrupted by order of the court, the children’s behavior had improved greatly, and “[t]hey both sleep through the night soundly. They’re not waking up in the middle of the night screaming hysterically. They’re no longer withdrawn. They’re back to their normal selves. They’re happy, active.” The mother further testified that at the time of the hearing she had been remarried for almost three years and was employed with an eye care company, earning about $48,000 a year.
Sgt. Jep H. Tallent, with the family services division of the Decatur Police Department, testified that he believed that the child’s allegations were unfounded, because the child had initially accused the stepmother then later blamed her father.
At the April 2, 2001, modification hearing, the father testified that he had not seen his daughter since July 1999, during the visit from which the allegations of sexual abuse arose. He stated that the last time he saw his son was in August 2000, during a session with a licensed professional counselor.[2]
The father testified that he believed it would be in the best interests of the children to live with him, because during his marriage to the mother, “I was more of a parent to these children than [the mother] .... I was the one that took the children to school, picked them up from school, cooked dinner, made sure they were dressed.” He testified that since the divorce, he had remarried, and that his current wife was seven months pregnant. He stated that they currently have two children living with them in their three-bedroom home. The father testified that *835 he earns about $18,000 a year as a photocopier service technician.
The stepmother, a social worker, testified that, in her opinion, if the father was granted custody of the children, the children were “definitely going to need counseling.” She further stated that even though the husband “is a wonderful father and wonderful husband,” either awarding him custody or rescheduling visitation with him would be traumatic for the children, although the trauma would be “short-lived.”
In reviewing the case at hand, we must apply the three-pronged analysis as set out in Kirtland v. Fort Morgan Authority Sewer Service, 524 So.2d 600 (Ala.1988). Here, the record contains voluminous evidence substantiating the mother’s claim that the parties’ minor child was sexually abused. We find that such evidence would serve as a meritorious defense for the mother against the father’s petition to modify and to hold the mother in contempt. In addition, the record reflects that the father obstructed the reunification plan with the children by refusing to pay for, and failing to attend, counseling as ordered by the court. Therefore, we find that setting aside the default judgment would not unfairly prejudice the father. Finally, the record indicates that the mother’s attorney, upon learning that the court had entered a default judgment against her client, immediately moved to set aside the default judgment and took appropriate measures to rectify the mother’s failure to appear for trial. We do not find culpability on the part of the mother or her attorney. Accordingly, we conclude that the trial court erred in refusing to set aside the default judgment.
The mother next argues that the court erred in finding her in contempt of. court for failure to abide by prior court orders. The Court of Civil Appeals has jurisdiction to hear an appeal from a finding of contempt — criminal or civil — if the finding of contempt arises out of a domestic-relations case. Tetter v. State, 358 So.2d 1046 (Ala.1978); Rule 70A, Ala. R. Civ. P. Absent an abuse of discretion, or unless the judgment of the trial court is so unsupported by the evidence as to be plainly and palpably wrong, the determination of whether a party is in contempt is within the sound discretion of the trial court. Shellhouse v. Bentley, 690 So.2d 401 (Ala.Civ.App.1997).
The court, on April 2, 2001, in addition to changing custody of the children to the father, also held the mother in contempt for her failure to abide by prior court orders. The father testified that the mother had denied him visitation on three occasions, in violation of an October 13, 1998, court order; however, he contradicted himself by admitting that on two of those occasions, it was his fault for not providing the mother with the required notice pursuant to the court’s 1998 order.
The trial court found the mother “in willful contempt for failure to obey the prior court orders.” She went on to state, “I am going to find that she has failed to allow him (father) to visit 365 days ... and she is ordered incarcerated one day for each 365 days.” The judge ordered the incarceration suspended with the following provision:
“[t]hat she will surrender the children peacefully to their father, and that she comply with the court’s orders and not interfere with his custody, and that any visitation that she receives that she will always be obligated to return the children immediately to their father, and that is assuming if you decide to let her have them without your supervision. Failure to comply with that will immedi *836 ately result in a 'writ of arrest being issued for her arrest.”
After a thorough review of the record, we conclude that the trial court’s finding of contempt is unsupported by the evidence, that its finding is plainly and palpably wrong, and that the court abused its discretion.
The mother next argues that the court erred in awarding the father an attorney fee. We have stated:
“Whether to award an attorney fee in a domestic relations case is within the sound discretion of the trial court and, absent an abuse of that discretion, its ruling on that question will not be reversed. Thompson v. Thompson, 650 So.2d 928 (Ala.Civ.App.1994): ‘Factors to be considered by the trial court when awarding such fees include the financial circumstances of the parties, the parties’ conduct, the results of the litigation, and, where appropriate, the trial court’s knowledge and experience as to the value of the services performed by the attorney.’ Figures v. Figures, 624 So.2d 188, 191 (Ala.Civ.App.1993). Additionally, a trial court is presumed to have knowledge from which it may set a reasonable attorney fee even when there is no evidence as to the reasonableness of the attorney fee. Taylor v. Taylor, 486 So.2d 1294 (Ala.Civ.App.1986).”
Davis v. Davis, 686 So.2d 1245, 1249 (Ala.Civ.App.1996).
In this case, the mother submitted a substantial amount of evidence, much of it from expert testimony, indicating that the minor child had been sexually abused by the father. The record reflects that the mother did everything she could to protect her children. The record indicates that the reason the mother was absent from the April 2001 hearing was because of a clerical error on the part of her attorney. We have held that the court erred in its award of custody to the father, and in failing to set aside the default judgment. After thoroughly reviewing the record, we conclude that the court’s imposition of an attorney fee in this case is punitive in nature and is not warranted.
The judgment is reversed and the case is remanded for the trial court to enter an order consistent with this opinion.
REVERSED AND REMANDED.
THOMPSON and PITTMAN, JJ., concur.
CRAWLEY, J., concurs in the result.

. Rule 4(a)(5), Ala. R.App. P., provides:
“A notice of appeal filed after the entry of the judgment but before the disposition of all post-judgment motions filed pursuant to Rules 50, 52, 55, and 59, Alabama Rules of Civil Procedure, shall be held in abeyance until all post-judgment motions filed pursuant to Rules 50, 52, 55, and 59 are ruled upon; such a notice of appeal shall become effective upon the date of disposition of the last of all such motions.”

. This, apparently, was because of the August 3, 1999, order suspending the father's visitation rights.