## Ketcham v. Commonwealth.

(Decided July 1, 1924.)

### Appeal from Laurel Circuit Court.

1. Contempt—Falls into Two Classifications, Civil and Criminal.—Contempts fall into two general classifications, civil contempt and criminal contempt.

2. Contempt—"Civil Contempt" Defined.—A "civil contempt" is a failure to do something ordered to be done by a court in a civil action for benefit of opposing party therein.

3. Contempt—"Criminal Contempt" Defined.—"Criminal contempt" is conduct that is directed against dignity and authority of court, and may occur in either criminal or civil actions and special proceedings, such as refusal to testify.

4. Contempt—Court Without Authority to Require Spectator in Courtroom to Answer Questions Concerning Membership in Ku Klux Klan, and Refusal to Answer Not Contempt.—A spectator in courtroom was not guilty of criminal contempt in refusing to answer questions of judge of circuit court as to members of Ku Klux Klan known to such spectator; such judge having no authority to resolve himself into a court of inquiry for purpose of ascertaining whether or not an offense had been committed, under Criminal Code of Practice, section 13, subsec. 3, or elsewhere.

5. Contempt—Appeal May be Taken from Judgment Punishing for Contempt.—Under Ky. Stats., section 950-1, appeal may be taken to Court of Appeals from judgment punishing for contempt to determine whether punishment declared was illegally imposed, and whether punishment was excessive.

LEWIS & LEWIS for appellant.

FRANK E. DAUGHERTY, Attorney General, and GARDNER K. BYERS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY SANDIDGE, COMMISSIONER—Reversing.

This is an appeal by L. M. Ketcham from a judgment of the Laurel circuit court against him which was rendered on the verdict of a jury finding him guilty of con-

tempt of court and fixing his punishment at a fine of $500.00 and 30 hours in jail.

The facts out of which the proceeding arose are substantially as follows: On the 7th day of March, 1924, appellant was a spectator in the Laurel circuit court. He was called from the auditorium of the courtroom to the bar of the court while it was in session and was sworn by the judge of the court to testify concerning violations of the law in Laurel county of which he might have knowledge. The court then asked him if he was an organizer or representative of the Knights of the Ku Klux Klan, and he responded that he was a "field worker" for that organization. He was then asked to furnish to the court the names of the members of that organization in Laurel county. He responded that he had no list of the names and did not know all of them. The court then asked him if he knew any of them, and he responded that he did. Thereupon, the court asked him to give the names of those that he knew who were members of the organization, and appellant declined to do so. The court thereupon, holding appellant to have contemned the court, imposed upon him as punishment thirty hours' imprisonment in jail.

After appellant had been remanded to jail under that sentence, at the direction of the court, he was brought again before the court and again asked to disclose the names of those in Laurel county whom he knew to be members of the organization. Appellant again declined to do so, and the court for that refusal to answer the question adjudged appellant to be guilty of contempt of court and fixed his punishment at thirty hours' confinement in jail.

On the same day the court issued and had served on appellant a rule citing him to appear in the court at one o'clock on that day to show cause, if any he could, why he should not be punished at the hands of a jury by fine or imprisonment, or both, for contempt. Upon the trial of the contempt proceeding appellant filed a motion to quash the rule and entered a demurrer to it, both of which were overruled by the court. Appellant thereupon offered to file a response to the rule in which he set forth the facts substantially as above indicated, and the further fact that in declining to answer the question propounded to him by the court he did so in a courteous manner and not with the intent to contemn the court but with the belief that in so doing he was within his rights and that by so

doing he would not be guilty of contempt of court. He
further stated in his response that at the time the ques-
tion was propounded to him by the court, which he de-
clined to answer, he was not a witness in any action or
proceeding then pending before the Laurel circuit court
and had not been sworn to testify in any action or pro-
ceeding then pending before said court and that the court
did not have authority to propound to him the question
or to require him to answer it.

The court, upon the ground that the response to the
rule offered to be filed by appellant was insufficient, re-
fused to permit it to be filed. A jury was then impaneled
and sworn by the court "a true verdict to render." Ap-
pellant then offered to enter a plea of "not guilty" and
a written plea of "former trial and conviction," both of
which were refused by the court. Without any testimony
being heard the court peremptorily directed the jury to
find appellant guilty. The instruction given, however,
was much broader than the usual peremptory. It reads:

"The court will undertake to say to you, gentle-
men of the jury, by way of explaining the nature of
the matter that you are called to determine the pur-
pose of calling you here for this service.

"The defendant, L. M. Ketcham, is charged
with contempt of this court in failing and refusing
to answer the questions propounded to him by the
court as to who are members of the organization
known as the Invisible Empire, Knights of the Ku
Klux Klan. The defendant admits his connection
with that organization, to the effect that he is a field
worker, or organizer for that organization, and con-
fesses that he knows at least some of the members
of that organization in this community. In order
that you may understand the nature of the investi-
gation, and the reason for requiring this information
of Mr. Ketcham, the court will explain to you that
there have been certain letters of a threatening
character, published or mailed or sent to various
persons in this community, the court having received
some three or four or five of such letters, and these
purporting to come from the Ku Klux Klan. Dur-
ing the present term of this court, one night, there
was a fiery cross, supposed to be the insignia of this
organization, burned on one of the hills on the north
side of town, and while that was going on certain

shots and blasts were fired off on the south side of town. Some of the citizens of town seemed to be alarmed and disturbed and reported those facts to the court. The court then instructed the grand jury to make some investigation of the matter, but it appears that the grand jury investigation was stifled in some way, and they were unable to learn anything about these matters at all, according to the report of the foreman of the grand jury on the subject. Then the court undertook to conduct an investigation of his own motion. Mr. Ketcham, the defendant in this rule, was asked by the court to furnish him the names of members of that organization in this community, with a view of enabling the court to find out from the members of that organization whether or not the klan had anything to do with, or any connection with these letters or with this disturbance. The defendant failed and refused to answer that question for the court, basing his refusal to answer upon his obligation to his organization, that to answer the question would incriminate him with the Invisible Empire, Knights of the Ku Klux Klan, and also assigned as a reason for refusing to answer that he doubts the authority of this court to ask such a question of him, or to require an answer to it. The court does not share Mr. Ketcham's doubts on this subject, and for that reason holds and adjudges him to be guilty of the contempt charged in this rule, and instructs you, gentlemen of the jury, to find him guilty as charged in the rule, and fix his punishment at a fine of any amount in your discretion, or at imprisonment in the county jail for any length of time in your discretion, or you may both so fine and imprison him in your discretion.

"A. T. W. Manning, Judge,
Laurel Circuit Court."

It seems to us that the questions raised by appellant as to why the judgment should be reversed and the various errors of the trial court urged as reasons for a reversal may be merged and considered together by determining whether or not the judge of the Laurel circuit court, under the circumstances disclosed by the record, had the authority to propound the question and demand its answer, which was the basis of the contempt proceeding.

Contempts fall into two general classifications, commonly denominated "civil contempt" and "criminal contempt." A civil contempt is defined to be a failure to do something ordered to be done by a court in a civil action for the benefit of the opposing party therein. Criminal contempt is defined to be conduct that is directed against the dignity and authority of the court and may occur in either criminal or civil actions and special proceedings. We find that refusal to testify is one among the various acts that may be held to be criminal contempt. The rule is thus stated in 13 Corpus Juris, section 32, page 25:

"Unless the rule is otherwise by statute, a witness is in contempt who refuses to testify or to make answer to proper questions when under examination before the court, grand jury, commissioner, master in chancery, notary public, or referee, unless there is an entire want of jurisdiction on the part of the court, tribunal, or officer before whom the witness is called on to testify. However, subject to such statutory changes or modifications as may exist, to constitute such contempt the question asked the witness must be a proper and legal one and the evidence sought must be pertinent or material to some of the issues in the case."

Gregory's Kentucky Criminal Law, section 261, says on the subject:

"A criminal contempt cannot ordinarily be committed by one who is not an officer of the court, except in relation to some pending suit."

6 R. C. L., page 497, section 10, states the rule thus:

"It is a general rule that the refusal of a witness to testify at all, or to answer particular questions pertinent to the issue, put to him either in a proceeding before the court itself or before a subordinate officer duly empowered by the court to take his deposition or conduct his examination, is a contempt of such court, provided always the court has jurisdiction of the controversy or proceeding in which the witness is required to give his evidence. The most common cause of contempt in a witness is the refusal to answer a proper question, although

it may not be a contempt to refuse to answer an improper question which the court had no right to insist on.''

Thus it may be seen that to be guilty of contempt of court for failure to testify or to answer a question propounded one must fail to answer a proper question propounded in the course of a civil or criminal action or special proceeding. Appellant contends that he was not guilty of contempt of court because no trial of a civil or criminal action or special proceeding was in progress when the questions were propounded to him which he declined to answer. This brings us squarely up to the question as to whether or not the judge of a circuit court has authority to resolve himself into a court of inquiry, with inquisitorial powers, for the purpose of ascertaining whether or not an offense has been committed. It is conceded by the attorneys for the Commonwealth that no such power is expressly delegated to circuit courts by the Constitution or by the statutes conferring their jurisdiction. Our circuit courts, under the statutes conferring jurisdiction upon them, and by practice, for time immemorial, have been trial courts. Their jurisdiction in criminal proceedings is granted by subsection 3, of section 13, Carroll's Kentucky Criminal Code, in these words:

"The circuit courts shall have general jurisdiction for the trial of all prosecutions and penal actions, unless exclusive jurisdiction be given to other courts."

It will thus be seen that a circuit court's jurisdiction in criminal matters is confined to the *trial* of prosecutions. It is provided that, as a part of the machinery of circuit courts for instituting prosecutions against those guilty of violations of the law, a grand jury shall be convened. Grand juries are expressly vested with inquisitorial powers to inquire into all treasons, felonies and breaches of the penal laws committed within their jurisdiction. Express authority is granted by statute to magistrates to hold courts of inquiry and examining courts, and in that connection they also are expressly invested with inquisitorial powers. If, upon examination by a grand jury, it reaches the conclusion that a person has committed a crime it has authority to indict the

accused. It thereby institutes the prosecution that will
result in the accused being brought to trial and the truth
or falsity of the charge against him being established.
In connection with the authority to hold courts of in-
quiry, magistrates are also expressly vested with author-
ity to issue warrants of arrest and thereby set in motion
the machinery provided for the apprehension and trial
of those charged with crime. There is reason for vest-
ing in a magistrate who has authority to issue a warrant
inquisitorial powers. If, as a result of the inquiry, he
has reasonable grounds to believe that an offense has
been committed, he may issue a warrant for the accused
and thus put in motion the machinery provided for the
determination of the question. Likewise a grand jury
may accuse one, whom their inquiry discloses to have
committed a crime, by indictment and thus bring about
his being tried for the crime. A circuit judge has no
authority to issue a warrant for the arrest of one charged
with crime. If, on the occasion in question, the circuit
judge's inquiry had disclosed that an offense had been
committed, he could not have issued a warrant for the of-
fender. He merely could have referred the matter to
the grand jury for its action. Then why say that a
judge may hold an inquisition that has no authority to
act after he is in possession of the knowledge gained
from it? In this connection we may advert to the history
of the beginning of the institution we know as the "grand
jury." It originated in England and grew out of the
constant struggle between the king and his subjects with
respect to his powers and their rights. It is one of the
institutions established by the people for their protection
to prevent the powers of the government from encroach-
ing upon the rights of the people. It is the means of
protecting the citizen from unfounded accusation. Its
establishment took from judges and other agents of the
crown the authority to inquire into and present all in-
famous offenses and those accused thereof. The grand
jury system was ingrafted into and made a part of our
jurisprudence from the beginning. No substitute has
been found that the people have consented to accept.
The grand jury as an institution is recognized and its
benefits are guaranteed to our citizens by both our fed-
eral and our state Constitutions. Aside from the in-
herent inquisitorial powers possessed by grand juries,
no other agency has or may exercise such powers except

by authority expressly conferred and then only within constitutional limits.

It is contended for the Commonwealth that the sentence found in the statute conferring jurisdiction on circuit courts which reads, "each circuit judge shall be a conservator of the peace throughout the state," grants them by implication the right and authority to conduct courts of inquiry. By that sentence the legislature merely conferred upon judges of our circuit courts the same authority that sheriffs and other peace officers have to preserve and maintain the public peace and prevent and suppress its violation.

At the time the court below propounded to appellant the question which he declined to answer, appellant was not a witness in any civil or criminal case or special proceeding then pending or being tried by the Laurel circuit court. The judge of the court on his own motion was undertaking to hold a court of injury. The question propounded to appellant was not a question relevant to an issue then being tried in any civil or criminal action or special proceeding. Under these circumstances we are constrained to hold that in propounding to appellant the question he declined to answer the court was acting without his jurisdiction and that appellant's declining to answer was illegally held by the court below to be contempt of court.

It is insisted for the Commonwealth, however, that under section 950-1, Kentucky Statutes, no appeal may be taken to this court to reverse a judgment punishing for contempt. On that question, in French v. Commonwealth, 30 Ky. Law Rep. 98, we said:

> "We think, therefore, that the rule prevailing in this state permits us to entertain the appeal in the case at bar, not for the purpose of re-trying the question of whether appellant is, or is not guilty, of the contempt charged, but to determine whether the punishment declared by the judgment complained of was illegally imposed and whether such punishment is excessive as claimed." See also Turner v. Commonwealth, 59 Ky. 619; Bickley v. Commonwealth, 2 J. J. M. 574; Newport, et al. v. Newport Light Co., 92 Ky. 450; Adams v. Gardner, Judge, 176 Ky. 252, 195 S. W. 412; Union L. H. & P. Co. v. Tracy, Judge, 177 Ky. 662, 197 S. W. 1175.

It follows from the foregoing that the judgment against appellant was illegally imposed and it is, therefore, reversed and this cause remanded with directions to quash the rule which issued against appellant.

Whole court sitting.