Honorable Joe G. LEIBSON, Judge
Jefferson Circuit Court, Movant,

v.

Daniel T. TAYLOR, III, Respondent.

Honorable Joe G. LEIBSON, Judge,
Jefferson Circuit Court, Appellant,

v.

Daniel T. TAYLOR, III, Earl Eugene
Oliver and Victor J. Oliver,
Appellees.

Supreme Court of Kentucky.

Sept. 25, 1986.

As Corrected Jan. 22, 1987.

Rehearing Denied Jan. 22, 1987.

David L. Armstrong, Atty. Gen., David
A. Smith, Asst. Atty. Gen., Frankfort, for
movant and appellant.

Daniel T. Taylor, III, Samuel B. Carl,
Louis J. Hollenbach, Louisville, for respon-
dent and appellees.

Frank E. Haddad, Louisville, for amicus
curiae.

## OPINION OF THE COURT

The procedural nightmare presented by these cases is aggravated by the absence of a complete transcript of the proceedings in the Trial Court. The parties made several attempts to obtain a transcript. An order was obtained from the Court of Appeals requiring the court reporter to produce the transcript; it later ordered the seizure of the court reporter's stenotype tapes and notes, but the transcription thereof was impossible. A motion was made to hold the Trial Judge (but not the court reporter) in contempt for failing to require the reporter to transcribe the proceedings. It became obvious to the Court of Appeals that trying to obtain a transcript by putting pressure on the court reporter was an exercise as futile as attempting to make forward progress with a chain by pushing it. Of necessity, the Court of Appeals was required to sidestep the otherwise-inflexible rule to the effect that a party who seeks relief from an appellate court must assume responsibility for presenting said court with a record of the proceedings in the Trial Court. The Court of Appeals held an evidentiary hearing at which the Trial Judge and counsel testified. It became immediately apparent that even this extraordinary step would not solve the problem; factual disputes were not resolved and, affidavits were filed to supplement the "testimony" at the evidentiary hearing conducted by the Court of Appeals.

On the basis of the foregoing "record," it appears that the following occurred:

Earl and Victor Oliver were indicted for the murder of Claude Fletcher in Jefferson County, Kentucky. The Commonwealth's case included an eyewitness statement and the transcript of a statement made by Victor to the police that he and his brother fired their pistols several times at the victim. The joint trial of Victor and Earl was scheduled for May 8, 1984. The Trial Court, the Honorable Joe G. Leibson, Judge, scheduled a hearing on the defendants' motion to suppress Victor's confession for May 2, 1984, but the officers who could authenticate the confession did not appear for the suppression hearing. Judge Leibson ordered Victor's confession suppressed. On the day of the joint trial, attorney Daniel Taylor, who had theretofore represented both defendants, announced he represented only Earl. Eight months before trial, another attorney was appointed to represent Victor. A discussion was held in chambers wherein the prosecutor offered to dismiss the indictment against Victor in exchange for his testimony against Earl. Taylor objected on behalf of his client; Victor's counsel did not object, and there is no evidence that he gave an affirmative assent to the purported "deal." Judge Leibson, who believed an agreement had been reached, dismissed Victor's indictment "with prejudice." The case against Earl then proceeded to the jury selection stage. Judge Leibson ordered both the prosecutor and the defense to submit to him the names and addresses of all prospective witnesses so that he could participate in the jury selection process. Taylor refused to comply with Judge Leibson's order; as nearly as can be determined from the "record" before us, Taylor's refusal was respectful (there is evidence of other contumelious conduct on his part on other occasions during the trial, and his brief in this court contains some intemperate remarks about the Trial Judge, but whether or not these other incidents constitute contempt is not before us). Judge Leibson held Taylor in contempt for his failure to comply with the order to identify his witnesses; any penalty was suspended pending appeal. Judge Leibson refused Taylor's request for an opportunity to present the issue to the Court of Appeals by a writ of prohibition, or otherwise, and ordered that the trial proceed. The prosecution's eyewitness did not hold up very well on the stand. Victor was then called to testify, but he refused on the grounds that his testimony might incriminate him. Thereupon, Judge Leibson declared a mistrial, set aside the orders dismissing Victor's indictment and suppressing his confession, and set a new date for the joint trial of Earl and Victor.

Writs of Prohibition were sought from the Court of Appeals. The Court of Appeals reversed the conviction of contempt against Taylor on the grounds that Judge Leibson exceeded his authority in ordering the production of the defendants' witness list; it prohibited Judge Leibson from reinstating Victor's indictment, and it prohibited further prosecution of Earl on the basis of the Double Jeopardy Clause of the Fifth Amendment. We find that Taylor was in contempt of court, but that he cannot be prosecuted therefor; a majority of this Court agrees with the Court of Appeals that the Double Jeopardy Clause of the Fifth Amendment prohibits further prosecution of Earl, and we find that it is not necessary for us to rule with respect to any further prosecution of Victor.

### Taylor's Contempt of Court

■ We sustained the motion of attorney Frank E. Haddad, Jr. for leave to file an *amicus curiae* brief. The *amicus curiae* urges us to hold that Taylor should not be held in contempt of court because, as counsel for a defendant in a criminal case, he should not be compelled to disclose the identity of prospective defense witnesses. Appellees Taylor and Oliver make similar arguments. We have recently ruled on a related subject in *Lowe Jr. J. v. Commonwealth*, 712 S.W.2d 944 (1986), but we decline to make any further ruling in this case; there is no constitutional compulsion for us to do so, *Commonwealth v. Donovan*, Ky., 610 S.W.2d 601 (1980); *United States v. Nobles*, 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975). The issue before us in these cases is not whether Judge Leibson had the right to order attorney Taylor to identify his witnesses, but rather whether Taylor complied with a direct order of the Court. Taylor did not so comply, and it therefore follows that he was in contempt of court.

■ Despite the implications that may be drawn from such cases as *Herr v. Humphrey*, 277 Ky. 421, 126 S.W.2d 809 (1939),

it is clear that proceedings on writs of prohibition seeking relief from citations for contempt of court should not be used as vehicles for testing whether or not the Trial Court committed a legal error when it issued the order that was disobeyed. Except in rare and extraordinary circumstances, orders issued by a Trial Court must be obeyed, whether they are erroneous or not. Respectable authority teaches:

> ... [W]e find impressive authority for the proposition that an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings. This is true without regard even for the constitutionality of the Act under which the order is issued.... Violations of an order are punishable as criminal contempt even though the order is set aside on appeal ... or though the basic action has become moot. *United States v. United Mine Workers of America*, 330 U.S. 258, 293–294, 67 S.Ct. 677, 695, 696, 91 L.Ed. 884 (1947).

There remains the very formidable question of whether a person may with impunity knowingly violate an order which turns out to be invalid. We hold that in the circumstances of this case he may not.... Absent a showing of "transparent invalidity" or patent frivolity surrounding the order, *it must be obeyed* until reversed by orderly review.... *United States v. Dickinson*, 465 F.2d 496, 509 (C.A. 6th, 1972) (emphasis the court's).

*Accord, City of Covington v. Sanitation District No. 1 of Campbell and Kenton Counties*, 459 S.W.2d 85 (1970).

■ Taylor refused to obey the Court's order, therefore he was in contempt. Taylor's contempt was "criminal" in that his conduct was "directed against the dignity and authority of the court." *Ketcham v. Commonwealth*, 204 Ky. 168, 170, 263 S.W. 725, 726 (1924).[1] At other

---

1. Despite what appear to be clear distinctions made in *Ketcham* between "civil" and "crimi-

nal" contempt, said distinctions seem to have become blurred in subsequent cases. A worka-

times, he also made derogatory remarks in the presence of the Court, but he was not cited for them, and therefore we cannot rule on whether or not the remarks constituted contempt. However we can and must hold that despite our finding that Taylor was guilty of contempt, he cannot be punished therefor. He requested, and was denied leave to seek appellate relief from the Trial Court's ruling holding him in contempt. He was instructed that he must proceed with the trial. He was denied the right to contest the contempt ruling in another court, and therefore he cannot be punished therefor. It is indeed ironic that the conduct of Taylor in another trial should have led to the decision by the Supreme Court of the United States on the subject of the right to a hearing in a contempt situation, *Taylor v. Hayes*, 418 U.S. 488, 94 S.Ct. 2697, 41 L.Ed. 897 (1974).

### The "Reinstatement" Of Victor's Indictment

■ The "record" is unclear with respect to whether Victor was sworn and then refused to testify or whether he refused even to take an oath. What is clear is that he was on sound constitutional ground when he refused to give evidence because it might tend to incriminate him. Whether or not his indictment had been dismissed "with prejudice" (a term that is more widely used in civil practice), it was dismissed before the trial began, and therefore he was subject to being re-indicted for the same offense, *Commonwealth v. Smith*, 244 S.W.2d 724 (1951).[2] Therefore, any distinction that the parties hereto have attempted to draw between the right of the Trial Court to "reinstate" an indictment that was dismissed "with prejudice" or the right of the Trial Court to "set aside" a previous order dismissing the indictment, is moot, and we make no ruling with reference thereto. Moreover, we express no

ble (and poetic) description of "criminal contempt," as opposed to civil contempt is made in 11 Wright & Miller, *Federal Practice and Procedure* § 2960: Criminal contempt "penalizes yesterday's defiance rather than seeking to coerce tomorrow's compliance."

opinion with respect to the use of Victor's "confession" in any subsequent trial.

### Double Jeopardy For Earl

■ On the second day of the trial the Trial Court declared a mistrial. The mistrial was not declared pursuant to a motion by the defendant. The order granting a mistrial recites no grounds for the granting of the mistrial. Six days later, the Trial Court entered in the record a document entitled "Findings of Fact," in which it was stated:

It is the court's belief that Earl Eugene Oliver, the defendant on trial, has improperly influenced his brother, Victor Oliver, in this matter. The circumstances surrounding Victor's refusal to give evidence, including his refusal to even be sworn as a witness, suggests the type of misconduct which required sustaining the Commonwealth's motion for a mistrial.

The Commonwealth argues that Earl can be retried because the termination of the trial was "manifestly necessary" within the meaning of K.R.S. 505.030(4)(b). A majority of this Court disagrees; we do not feel that the Trial Court stated sufficient grounds to support a finding of "manifest necessity." Victor was acting within the scope of his constitutional rights when he refused to testify, so, whether he was "improperly influenced" to do so is irrelevant. The Fifth Amendment of the Constitution of the United States guarantees that no "person be subject for the same offense to be twice put in jeopardy of life or limb," and it is manifestly clear that after the jury had been empaneled, after evidence had been received, jeopardy had "attached." It is also clear that the defendant did not ask for a mistrial, nor did he concur therein. Therefore the conclusion is inescapable that Earl cannot be retried. The Constitution makes no exceptions for people who

**2.** Although it is not in the "record," we are told by counsel in their briefs that Victor was, in fact, reindicted.

are "obviously" guilty. Indeed, the cases which established the rights and liberties which we enjoy usually involved persons whose lives are less than exemplary.

So much of the Opinion and Order of the Court of Appeals which prohibits the respondent Judge from proceeding to a retrial of Earl Oliver, and ordering the dismissal of the indictment against Earl Oliver for the murder of Claude Fletcher, is affirmed. So much of the Opinion and Order of the Court of Appeals which reverses the order of the Trial Court holding attorney Taylor in contempt is reversed, but so much of said Opinion and Order which prohibits punishment therefor is affirmed.

STEPHENS, C.J., GANT, STEPHENSON, VANCE and WINTERSHEIMER, JJ., and O. GRANT BRUTON and OSCAR GAYLE HOUSE, Special Justices, sitting.

STEPHENS, C.J., and GANT, STEPHENSON and VANCE, JJ., concur.

O. GRANT BRUTON, Special Justice, dissents and files a separate dissenting opinion in which WINTERSHEIMER, J., and OSCAR GAYLE HOUSE, Special Justice, join.

O. GRANT BRUTON, Special Justice, dissenting.

I respectfully dissent from so much of the majority opinion as holds that Earl Oliver cannot be retried.

The Trial Court made a finding that the termination of the trial was "manifestly necessary," K.R.S. 505.030(4)(b). There is abundant evidence in the "record" of sharp practice and other improprieties which would sustain said finding by the court. Bedrock principles of appellate practice should require us to uphold the findings of the Trial Court, unless the evidence in the record compels us to do otherwise. A recalcitrant court reporter and the "findings" of the Court of Appeals made pursuant to an extraordinary evidentiary "hearing" should not require us to depart from said principles.

I also take respectful issue with an assumption that appears to underlie the opinion in this case, namely, that right to a fair trial is only afforded to the accused in a criminal trial. Not every trial stratagem of defense counsel rises to the level of a constitutional right; our system of justice requires proper and ethical behavior by counsel for the Commonwealth *and* for the defense. The Commonwealth is entitled to a fair trial also, and it is entitled to a termination of the trial when it is "manifest" that justice is not being served. The record in this case contains pre-trial statements to the effect that the Oliver brothers blazed away with their pistols at a fleeing victim. This Court is telling the people of the Commonwealth that with respect to Earl Oliver, a jury will never be allowed to determine whether he is a cold-blooded murderer. In my view, it is "manifestly necessary" that Earl Oliver be tried for this capital crime.

WINTERSHEIMER, J., and OSCAR GAYLE HOUSE, Special Justice, join in this dissent.