ON REHEARING
Our original opinion in this cause is hereby withdrawn and the following is substituted in its place.
This is an appeal by Alyce Thomas from the denial of her petition for writ of habeas corpus. The issue presented is whether the juvenile court had jurisdiction to hold a parent in direct civil contempt for her failure to disclose the whereabouts of her juvenile son. Under the circumstances of this case, this Court finds that the juvenile court had absolutely no authority or jurisdiction to proceed as it did.
 I
The facts contained in this opinion were gathered from the hearing in juvenile court on May 24, 1988, the hearing in circuit court on June 2, 1988, and the various orders of the juvenile court and the police reports made a part of the record on appeal. Both the original record and the supplemental record have been considered by this Court.
The relevant facts are set out in chronological order:
May 12, 1988: A fire bomb was thrown into an apartment in Gadsden, Alabama, *Page 1059 
causing the death of the infant Tamel Jackson. Investigation by the Gadsden Police Department resulted in three suspects: (1) Yul Devoe "Bobo" Guice, Alyce Thomas's adult son; (2) Steve Thomas, Mrs. Thomas's 17-year-old son; and (3) Ollis Madden, Mrs. Thomas's 17-year-old grandson.
May 13, 1988: The police obtained "juvenile pick-up orders" for Ollis and Steve. Each order was issued by Etowah County Juvenile (District) Court Judge Robert E. Lewis. Each order stated that there was probable cause to believe that each juvenile had committed or was actively involved in committing a murder and arson. That same morning, the police went to the Thomas residence, but Steve fled out a side window of the house, apparently without the prior knowledge of Mrs. Thomas. Around 6:00 that evening, Steve telephoned Mrs. Thomas and told her "we ain't done nothing . . . we tired of hiding . . . come and get us and take us on downtown."
Mrs. Thomas and her husband took Steve to the police station. The arrest report shows that Steve was arrested at the Gadsden City Hall at 7:30 on the night of May 13, 1988.
May 15, 1988: Having been held in police custody since his arrest, Steve was released, without being charged, into the custody of either his parents or Mrs. Thomas, at 2:00 on this Sunday morning.
State's Exhibit 1, introduced into evidence at the hearing in juvenile court on May 24, 1988, is a copy of the "arrest report" on Steve Thomas made by the Gadsden Police Department. Under the "narrative" portion of that report appears the following handwritten notation:
"Release to Mother
Mother Alyce Thomas /s/ Alyce Thomas"
This was the "release form" signed by Mrs. Thomas.
Gadsden Police Lieutenant Jeff Wright testified that he informed Mrs. Thomas that Steve was being released into her custody, that charges would probably be forthcoming, and that "we would get in touch with them, and they could produce him up to us." Lt. Wright testified that Mrs. Thomas signed "the release form" and left with her son. An entry in an "Alabama Uniform Incident/Offense Report Supplement" states: "Mr. Thomas asked [Lt.] Hooper what was going to happen to his boy Steve. Lt. Hooper advised he would be released into their custody, pending charges being signed at a later date. He said they would bring him back whenever we let him know. Both Mr. and Mrs. Thomas were present at this time."
Mrs. Thomas testified that she did not remember signing a release order or any conversation about bringing Steve back. She testified that, at that time, she was hysterical and crying.
May 17, 1988: Lt. Wright testified that on this date he saw Mrs. Thomas at his office and that she told him that she knew where Steve was.
May 18, 1988: Gadsden Police Officer Duane Hooper testified that, on this date, Mrs. Thomas acknowledged that she knew where Steve was and that she would have him come in and give a statement to the police.
May 23, 1988: After Steve had not appeared for further questioning, Judge Lewis issued a "juvenile pick-up order" for Steve at the request of the police department. The order stated that Steve "is a suspect in an arson/murder case and has been evading custody by law enforcement officials. It is ordered that the child be taken into immediate custody and delivered to Juvenile Cells of the Gadsden City Jail."
Lt. Wright testified to the effect that, when the police went to the Thomas residence to execute this order, Mrs. Thomas stated that she had not known where her son was since his release from police custody on May 15. Lt. Wright testified:
 "I asked Mrs. Thomas if — if her son Steve was there. She said, 'No, he's not.' I said, 'Can we talk to Steven?' She said, 'He's not here.' I said, 'Well, you indicated in my office that we could get in touch with Steve, that you'd bring him to us and we'd like to talk to him.' She said, 'I don't know where he's at.' I said, 'You told us you knew where he *Page 1060 
was at, that he'd come talk to us and go over his statement.' She said, 'I never said no such thing.' I said, 'Mrs. Thomas, when we released Steven to you, you signed a paper accepting custody of your child.'
"Q. State's Exhibit 1?
 "A. Correct. 'And that you would bring this child to us whenever we needed him, that he'd be in your custody, and you would know where he's at.' She said, 'I did not sign any paper.' I said, yes, ma'am, your name's on it! She said, 'I did not sign any paper. If you've got anything up there with my name on it, it's a lie.' I said, 'Mrs. Thomas, I don't have the paper with me, so I'm not going to argue with you right now about it.' She said, 'If you've got it up there, I'll eat it for my lunch.' I said, 'Well, we're not going to go into that right now. I'd like to talk to Steve. Do you know where he's at?' 'No, I do not. He ran off Saturday, and I haven't seen or heard from him since.' I said, 'Ma'am, you've told us before that you know where he's at. We'd still like to talk to him. Could you get in touch with him?' 'No, I can not.' And the conversation broke down a little bit more from there. Thank you and left."
Lt. Hooper corroborated Lt. Wright's testimony.
Mrs. Thomas testified that, after she and her husband got their son on May 15, they stopped at a store on the way home to purchase coffee, sugar, and milk. She said that she and Mr. Thomas went inside the store, leaving Steve in the car, and that when they returned Steve had gone, that she had not seen him since, and that she did not know where he was. Mrs. Thomas also denied telling police officers at any time that she knew where Steve was or that she would bring him in for additional questioning.
May 24, 1988: The police went to Judge Lewis and obtained a "witness attachment" for Mrs. Thomas. The record shows that Judge Lewis issued the following "Judgment/Order":
 "TO: ANY LAW ENFORCEMENT OFFICER, CITY OF GADSDEN/ETOWAH COUNTY
 "You are hereby ordered and directed to take into custody Alyce Thomas, mother of the above named Steve Thomas, at 1312 4th Avenue, Gadsden, Al., and place her in the Etowah County Jail for hiding and concealing a fugitive from justice contrary to law, viz: Steve Thomas, a juvenile age seventeen (17). Upon execution of said order a hearing will be held on this matter."
Mrs. Thomas was arrested at her residence that same morning. Approximately three hours later, a hearing was held "on the whereabouts of Steven Thomas." At that hearing, Mrs. Thomas was represented by counsel.
The exact nature of this hearing is ambiguous. The transcript of the hearing is entitled "HEARING ON THE WHEREABOUTS OF STEVEN THOMAS, A JUVENILE, 17 YEARS OF AGE." At the close of the hearing, Judge Lewis told Mrs. Thomas, "You are presently guilty of concealing and harboring a child which is a fugitive from justice," and held her in contempt of court.
After both the State and the defense had rested its case, the following occurred between the juvenile court judge and Mrs. Thomas:
 "THE COURT: Wait a minute. Wait a minute. Mrs. Thomas, I want to explain something to you here. Regardless of how you want to phrase your understandings at this point, you nevertheless at this point assumed custody of Steve, signed this paper and with the condition that you would produce him when they called for him. Now, from that, the fact that he is not here, you are presently guilty of concealing and harboring a child which is a fugitive from justice. There can be warrants issued for your arrest. There can be federal flight warrants issued on him, result of all of which is that you're making things a lot worse for Steve. That's one thing. Number two, I firmly believe you, you would know, number one, where he is or *Page 1061 
how to get in touch with him. Now, I'm ordering you right now to divulge his whereabouts or how to get in touch with him. Do you refuse?
 "MS. THOMAS: I can't tell you nothing. I don't know.
"THE COURT: Well, I believe you know.
"MS. THOMAS: Well, I can't help that.
 "THE COURT: Well, I'm going to tell you this. First of all, I believe you do know, and I'm going to find you in contempt of court for refusing to reveal the whereabouts of Steven. Now, in an effort to be fair to you, in hopes that you realize you're hurting the child with this action, I'm going to suspend committing you on contempt until 5:00 o'clock Friday afternoon. That will give you 72 hours to get in touch with Steven and tell him it's very much going to be in his best interest to come in or for you to either produce him by that time. Now, if by Friday at 5:00 o'clock, Steve is not in here and appears at the Gadsden Police Department, I'm going to order your commitment to the Etowah County jail for contempt of court, and you're going to stay there until Steven turns up. Now, do you understand that?
"MS. THOMAS: I sure do.
 "THE COURT: So, I am encouraging you for his best interest and the interest of yourself and family to have him show up by 5:00 o'clock on Friday afternoon, and if he's not, I'm going to hold you, commit you to the Etowah County jail until he does. Do you understand that Mrs. Thomas?
"MS. THOMAS: I sure do.
 "THE COURT: I don't think you — I don't think y'all really realize how much worse you're making this on Steve. Because if he don't show up, I can assure you it's going to be a lot worse. He can have additional charges filed. Now, I know he's a kid of 17 years old who may think he can hide, but he can't, because he'll be found once they issue that federal flight warrant that puts plugs in the FBI in every state, so if you have any interest in the kid in helping him, I suggest you get in touch with him and have him come in and be at the Gadsden Police Station by 5:00 o'clock Friday afternoon. Now, I'm trying my best to be fair with you. There's not any way y'all are going to convince me that this kid just dropped out of sight, and you don't know nothing about it, because all of you are too tight with the family, even I know that. So if he's not here, she's going to be held. She is held in contempt now and commitment will be executed 5:00 o'clock Friday afternoon. Plus the fact that they've got additional warrants that can be issued on her with the evidence here now. Plus the fact that flight warrants can be issued on Steve. That's going to make things a whole lot worse, and I hope you realize that."
May 27, 1988: Mrs. Thomas returned to court without her son. She was arrested and placed in jail. Judge Lewis issued the following order on a form entitled "JUVENILE COURT SUMMONS":
 "TO ANY LAW ENFORCEMENT OFFICER: You are hereby authorized and directed to take into custody and place in the Etowah County Jail, Alyce Thomas, mother of Steven Thomas, for the reason that she has heretofore been adjudicated in contempt of court and has refused to comply with the Order of the Court."
The above constitutes all the relevant events, for purposes of this opinion, which occurred in the juvenile court.
On June 1, 1988, Mrs. Thomas, through her attorney, filed a petition for writ of habeas corpus in the Circuit Court of Etowah County. A hearing was held on June 2. That hearing was continued to June 3 to allow Mrs. Thomas the opportunity to file an amended petition in order to satisfy and comply with the statutory requirements of habeas corpus.
Also, on June 2, petitions charging murder and arson were "sworn out" against the juvenile. Those petitions were "filed" on June 3.
At the hearing in circuit court, the only issue presented was the jurisdiction of the juvenile court to hold Mrs. Thomas in contempt. The propriety of the juvenile *Page 1062 
court's order was not challenged on other grounds.
On June 7, 1988, the circuit court denied the petition for writ of habeas corpus, with the following order:
 "It is the JUDGMENT AND ORDER of the Court that the Juvenile Judge of Etowah County had jurisdiction over the person of the Petitioner and, therefore, had the power and authority to punish for contempt for alleged disobedience of said Court's Orders. This Court has not attempted to consider the merits of this case, but rather to make a determination as to the Juvenile Court's jurisdiction and whether the Judge's actions were void. Based on the foregoing, the Petition of Alice [sic] Thomas is hereby denied."
Mrs. Thomas appealed from the order of the circuit court denying her petition. The record was filed in this Court on June 20, 1988. Mrs. Thomas's (appellant's) brief was filed on July 18, 1988. The Attorney General's (appellee's) brief was filed on August 11, 1988.
This Court issued a written opinion on August 17, 1988, reversing the judgment of the circuit court and directing that court to order the immediate release of Mrs. Thomas, who had remained in jail since May 27, 1988. Pursuant to that direction, Mrs. Thomas was released on August 18, 1988.
On August 31, 1988, the Attorney General filed an application for rehearing, alleging that our decision was based on an incomplete record. After the opinion of this Court had been issued, the Attorney General filed with the circuit court a motion "to supplement and correct" the record under Rule 10(f), A.R.A.P., which the circuit court granted. The supplemental record was filed with this Court on August 30, 1988, and it includes a transcript of a hearing held before Juvenile Court Judge Lewis on May 24, 1988, and additional juvenile court and police records. It does not appear that any of the material in the supplemental record was introduced into evidence at the hearing on the petition for writ of habeas corpus held in circuit court.
The purpose of Rule 10(f) is to supply materials omitted from the record so that the record on appeal will accurately reflect what occurred in the trial court. Rule 10(f) neither contemplates nor authorizes the introduction of documents, exhibits, evidence, or other matters which could or should have been, but were not, introduced at the original trial or hearing. Cf. Sylvest v. Stowers, 276 Ala. 695, 166 So.2d 423
(1964) (construing Ala. Code 1940, Tit. 7, § 827(la), which was similar to current Rule 10(f), A.R.A.P.). However, there has been no objection to the Attorney General's motion to supplement the record, the granting of this motion, or the filing of the supplemental record with this Court. Therefore, in the interest of clarifying the confusion surrounding the facts of this case, the supplemental record will be considered a proper part of the record before this Court. Furthermore, in order to avoid any confusion which may be caused by the addition of new facts contained in the supplemental record, the opinion of this Court issued August 17, 1988, is hereby withdrawn.
 II
The juvenile court had no authority or jurisdiction to order Mrs. Thomas's arrest, to find her in contempt, and to order her incarceration.
Alabama Code (1975), § 12-15-12(a), provides, "[s]ubject to the laws relating to the procedures therefor and the limitations thereon, the [juvenile] court may punish a person for contempt of court for disobeying an order of the court. . . ." The court's power to punish for contempt is limited by Alabama Code (1975), § 12-1-8, which provides in pertinent part:
 "The powers of the several courts in this state to issue attachments and inflict summary punishment for contempts shall not extend to any other cases than:
* * * * * *
 "(3) The misbehavior of any officer of the court in his official transactions or the disobedience or resistance of any officer of the court, party, juror, witness or any other person to any lawful writ, *Page 1063 
process, order, rule, decree or command thereof. . . ." (Emphasis added.)
"The sections of the Code referred to can only give the right of punishment when the party is 'in contempt' of a court having jurisdiction. A construction that would give a power of punishment in a case where jurisdiction had not attached would not be due process." Board of Revenue of Covington County v.Merrill, 193 Ala. 521, 544, 68 So. 971, 978 (1915). "Where the court is without jurisdiction, it logically follows that there can be no contempt in the disobedience of a void order." OldDominion Tel. Co. v. Powers, 140 Ala. 220, 226-27, 37 So. 195,197 (1904). In order to hold a person in contempt, a court must have "jurisdiction of the subject-matter and the person against whom the contempt was adjudged . . ." Ex parte Pearce, 111 Ala. 99,20 So. 343, 344 (1896). See generally, Annot., 12 A.L.R.2d 1059 (1950).
 "Jurisdiction in personal actions depends upon two elements: The subject-matter to be adjudged; the presence in court of the parties whose rights are to be affected by the judgment. In respect of subject matter the court acquires jurisdiction by the act of its creation; it is inherent in the constitution of the court. The other element it acquires by its own act, by its process properly issued and served, or by voluntary appearance of the defendant." Wolff v. McGaugh, 175 Ala. 299, 303, 57 So. 754, 755 (1911).
See also City of Dothan v. Holloway, 501 So.2d 1136, 1137
(Ala. 1986); Goulden v. State, 292 Ala. 704, 705, 299 So.2d 325
(1974).
 "Under our constitution and laws a judge cannot, by virtue of his office, resolve himself into a court of inquiry for the investigation of real or supposed misconduct that may have come to his attention in his courtroom or upon the street. Ketcham v. Commonwealth, 204 Ky. 168, 263 S.W. 725; Manning v. Ketcham, 6th Cir., 58 F.2d 948. No one's liberty would be secure if our people might abruptly be called before a judge, as Burton was here, with the alternative of answering questions or going to jail.
 "A court's power to punish for contempt does not exist in a vacuum. It cannot be exercised simply because a judge is on the bench or in chambers. The power is merely incidental and auxiliary to the judicial authority conferred by law upon the court. When there is a total lack of jurisdiction, as there was here, there can be no punishment for a refusal to submit to interrogation. Joyce v. Hickey, 337 Mass. 118, 147 N.E.2d 187." Ex parte Burton, 237 Ark. 441, 373 S.W.2d 409, 411 (1963).
See also Joyce v. Hickey, 337 Mass. 118, 147 N.E.2d 187, 190
(1958) ("The mere fact that the judge held office or was in the courtroom conferred no power upon him to commit for contempt. The defendant would have no such power if he was not engaged in considering a matter permissible for judicial inquiry.");Ketcham v. Commonwealth, 204 Ky. 168, 263 S.W. 725, 727 (1924) ("Thus it may be seen that to be guilty of contempt of court for failure to testify or to answer a question propounded one must fail to answer a proper question propounded in the course of a civil or criminal action or special proceeding.").
The juvenile court had no authority to hold Mrs. Thomas in contempt, because he had no jurisdiction to order her arrest. The juvenile court had issued a juvenile pick-up order for Steve. From the information the judge received from the police, it can be argued that he had reason to believe (1) that Mrs. Thomas had deliberately misled the police into believing that she would bring her son in for questioning when she had no intention of so doing, and (2) that Mrs. Thomas had refused to disclose her son's whereabouts to the police. As it is not necessary to the resolution of this case, we do not even begin to determine whether or not this alleged conduct, if proven, would constitute an indirect contempt in regard to the pick-up order of the juvenile court. Assuming, but not deciding, that Mrs. Thomas's conduct provided Judge Lewis with probable cause to believe that she was obstructing or interfering with an order of his court, the judge could have instituted indirect criminal contempt proceedings against Mrs. Thomas. *Page 1064 
Before May 24, Mrs. Thomas was guilty, if at all, ofonly indirect criminal contempt. Before the hearing, Mrs. Thomas had committed no act in the presence of the court and the judge had no personal knowledge of her activities.
A direct contempt is one committed in the presence of the court. See Graham v. State, 427 So.2d 998 (Ala.Cr.App. 1983). An indirect, or constructive contempt, is not committed in the presence of the court. See Ex parte Seymore, 264 Ala. 689,89 So.2d 83 (1956). "Direct contempt is committed in the 'actual presence of the court.' . . . 'Indirect contempt is contumacious behavior occurring beyond the eye or hearing of the court and for knowledge of which the court must depend upon the testimony of third parties or the confession of the contemnor.' " Matter of Heathcock, 696 F.2d 1362, 1365 (11th Cir. 1983) (citations omitted).
"The courts may summarily punish for a direct contempt as the personal knowledge of the trial judge, in whose presence the contemptuous conduct occurred, substitutes for evidence."Graham v. State, 427 So.2d 998, 1006 (Ala.Cr.App. 1983). Constructive contempt, however, is "punishable only upon notice and hearing." Carroll v. State, 350 So.2d 723, 728
(Ala.Cr.App. 1977).
 "In Alabama, a written accusation is essential to initiate an indirect contempt proceeding. International Brotherhood of Electrical Workers, Local 136 v. Davis Construction Engineers, Inc., Ala., 334 So.2d 892 (1976); Hunter [v. State, 251 Ala. 11, 37 So.2d 276 (1948)]; [Ex parte Tarpley], 53 Ala. App. 363, 300 So.2d 401, affirmed, 293 Ala. 137, 300 So.2d 409 (1974)]. A constructive contempt prosecution may be initiated by issuing a warrant of arrest requiring the accused to be held and be heard on the charge. A warrant must be supported by an oath or affirmation which affords probable cause as required by § 5 of the Constitution of Alabama. Alternatively, a constructive contempt proceeding may be begun by issuing a citation or rule nisi to the [contemner] to appear before the issuing court and show cause why he should not be held in contempt. If a citation or rule is employed, no affidavit would be required. Tarpley, supra, 53 Ala. App. at 369-370, 300 So.2d 401; Robertson v. State, 20 Ala. App. 514, 104 So. 561 (1924); Hunter, supra; Atkins v. State, 34 Ala. App. 101, 40 So.2d 444 (1948), cert. denied, 252 Ala. 227, 40 So.2d 446 (1949)." Carroll, 350 So.2d at 729.
The procedure for instituting a charge of indirect contempt is outlined in the State of Alabama Unified Judicial SystemBench Manual for District Judges, Law of Contempt, p. 16 (Administrative Office of Courts, January 1, 1982):
 "A written accusation is essential to initiate an indirect contempt proceeding. Such proceedings are begun by issuing either:
 "a. A warrant of arrest with supporting affidavit or
 "b. A citation or rule nisi to the [contemner] to 'appear and show cause why he should not be held in contempt.' Carroll v. State, 350 So.2d 723
(Ala.Cr.App. 1977); Hunter v. State, 251 Ala. 11, 37 So.2d 276 (1948)."
Because Mrs. Thomas was arrested and brought before the court on May 24 without either a rule nisi or a warrant of arrest supported by affidavit, she was not afforded due process, and the juvenile court was without jurisdiction to find her in contempt. See Craddock v. Oliver, 23 Ala. App. 183, 185,123 So. 87, 88 (1929) ("In the absence of an information or affidavit, sworn to by some person having knowledge of the facts, the judge of probate was without jurisdiction to proceed in this case."); Robertson v. State, 20 Ala. App. 514, 521-22,104 So. 561, 568 (1924) (affidavit upon which a contempt proceeding is based is jurisdictional), overruled on other grounds, Tetter v.State ex rel. Baxley, 358 So.2d 1043, 1044 (Ala.Cr.App. 1977), reversed, Tetter v. State, 358 So.2d 1046 (Ala. 1978).
Because the juvenile court had no jurisdiction to order the immediate arrest and incarceration of Mrs. Thomas on May 24 for her actions committed outside his courtroom, *Page 1065 
we cannot accept the State's argument that the order of contempt was direct and aimed towards Mrs. Thomas's in-court refusal to disclose the whereabouts of her son. This would be to allow the judge to do indirectly what he could not have done directly. Because Mrs. Thomas was not properly before the court, Judge Lewis had no right to question her.
 III
The juvenile court had no jurisdiction to order the arrest and incarceration of Mrs. Thomas for the criminal act of "hiding and concealing a fugitive from justice contrary to law."
A juvenile court has exclusive original jurisdiction to try any adult charged with: (1) aiding, encouraging or causing any child to become or remain delinquent (Alabama Code (1975), § 12-15-13); (2) disregarding a lawful order of the juvenile court (Alabama Code (1975), § 12-15-14); or (3) removing or concealing a delinquent child (Alabama Code (1975), § 12-15-15). These are misdemeanor offenses and such trials must be conducted in accordance with the "procedure and disposition applicable in the trial of such cases in a criminal court." Alabama Code (1975), § 12-15-76. Here, Mrs. Thomas has never been properly charged with any of these offenses.
Section 12-15-13(b) provides:
 "Whenever, in the course of any proceedings under this chapter or when, by affidavit as provided in this subsection, it shall appear to the juvenile court that a parent, . . . has aided . . . such child to become delinquent, . . . the court shall . . . have jurisdiction in such matters. . . . The court shall cause such parent . . . to be brought before it upon either summons or a warrant, affidavit of probable cause having first been made." (Emphasis added.)
Here, there was no affidavit of probable cause.
It is generally accepted in this state that a prosecution for a misdemeanor may be begun by a complaint. City of Dothan v.Holloway, 501 So.2d 1136, 1142 (Ala. 1986) (Beatty, J., dissenting); N. Chiarkas, Alabama Criminal Trial Practice § 13-2, n. 5 (1981). "A complaint is a written statement made upon oath before a judge or other official authorized by law to issue warrants of arrest, setting forth essential facts constituting an offense and alleging that the defendant committed the offense." Temp.A.R.Cr.P., Rule 15.1(c). Here, the order of arrest did not constitute a complaint. A reading of the record in this case convinces this court that the May 24 "judgment/order" of the juvenile court was a warrant for Mrs. Thomas's arrest. The order is even in the statutory form of a warrant of arrest, with the significant exception of any indication that it was issued pursuant to an affidavit or "complaint on oath" before the juvenile judge. Section15-7-4(c) provides:
 "(c) A warrant of arrest may be in substance as follows:
"The state of Alabama,
"__________ county.
"To any lawful officer of the state:
 "Complaint on oath having been made before me that the offense of (designating or describing it) has been committed and accusing C.D. thereof, you are, therefore, commanded forthwith to arrest C.D., and bring him before me.
"Dated the _____ day of __________ 19 __
 "(Signed) E.F., Judge "(or magistrate, as the case may be.)"
A warrant of arrest must be based upon a written affidavit. § 15-7-2. Clearly, the order of May 24, 1988, was an invalid arrest warrant issued without written affidavit. See Crittendenv. State, 476 So.2d 632, 634 (Ala. 1985) ("affidavits . . . which consist solely of the affiant's conclusion that the named individual committed an offense, without setting forth the facts upon which the conclusion is based, are fatally defective"). Therefore, the juvenile court was without jurisdiction to "try" Mrs. Thomas on the charge contained in the warrant. Magwood v. State, 22 Ala. App. 482, 117 So. 159
(1928) (a circuit court is without jurisdiction to try a defendant on a warrant issued by the circuit judge). See alsoKyser v. State, 22 Ala. App. 431, 432, *Page 1066 117 So. 157, cert. denied, 217 Ala. 561, 117 So. 159 (1928).
 IV
Additionally, the juvenile court did not have jurisdiction to order Mrs. Thomas's arrest "for hiding and concealing a fugitive from justice contrary to law" for an additional reason.
At the time in question, Steve had been arrested for murder and arson and had been released to the custody of Mrs. Thomas. No official or formal charges had been filed.
The "judgment/order" of arrest is vague and ambiguous as to what offense it charges Mrs. Thomas with having committed. It appears that the "judgment/order" of arrest attempted to allege a violation of Alabama Code (1975), § 13A-10-43, the offense of hindering prosecution in the first degree. That offense occurs where a person renders "criminal assistance" to another "with the intent to hinder the [other's] apprehension, prosecution, conviction or punishment . . . for conduct constituting a murder or a Class A or B felony." In this case, since Steve was charged with murder, a Class A felony, the offense of hindering prosecution constitutes a Class C felony, § 13A-10-43(b), and as such is beyond the jurisdiction granted a juvenile court. § 12-15-31. Moreover, we note that the commentary to § 13A-10-44
provides: "It should be noted that merely refusing to answer police questions concerning the fugitive . . . might be termed 'aid' but does not fall within the purview of the statute." §13A-10-44 Commentary.
 V
The order of May 24 directing Mrs. Thomas's arrest was described in a police report as a "witness attachment." At the hearing on the habeas corpus petition in circuit court, a deputy district attorney characterized this order as an "instanter order."
The juvenile court had no jurisdiction to "subpoena" Mrs. Thomas to court to testify as to the whereabouts of her son. The provisions of the law governing the issuance of subpoenas authorize the issuance of a subpoena to secure a witness's testimony either at trial or before a grand jury. Alabama Code (1975), §§ 12-21-180, -240, -243, -244; A.A.C.R., Rule 45. We know of no authority, and have been cited to none, except in the case of a grand jury, allowing any court to issue a subpoena for a witness where there is no actual case pending against a defendant. Burton, supra; Joyce, supra; Hickey, supra. Here, while Steve had been arrested, he had been released without being charged, and there had been no complaint filed against him. "Cases before the [juvenile] court shall be initiated by the filing of a petition by the intake officer who shall receive verified complaints and proceed thereon pursuant to rules of procedure adopted by the supreme court." Alabama Code 1975, § 12-15-50; A.R.J.P., Rule 12. Here, the verified complaint and the intake officer's petition were signed and verified on June 2, 1988. The intake officer's petition was filed on June 3, 1988 — 7 days after Mrs. Thomas had been incarcerated.
Moreover, even if the juvenile judge had the authority to issue a subpoena for Mrs. Thomas, he had no authority to order her attachment and immediate arrest and incarceration because she had not refused to obey any subpoena. "Until the witness had been served with a subpoena and thereafter refused or failed to come to court in response thereto, or until she was otherwise in contempt of court by refusing or failing to obey its mandate, the defendant was not entitled to an attachment for her as a witness, . . ." Myers v. State, 19 Ala. App. 98,100, 95 So. 331 (1923).
We know of no authority, and have been cited to none, which authorizes any judge of any court to order the immediate arrest of a person in order for the court to determine the location of a suspect in a criminal case.
 VI
Mrs. Thomas's attorney made no objection to the jurisdiction of the juvenile court until he filed the petition for writ of *Page 1067 
habeas corpus in the circuit court. Under the circumstances present here, we do not consider this omission fatal to Mrs. Thomas's case.
In Holloway, 501 So.2d at 1139, our Supreme Court held that "if the UTTC [charging DUI] is not verified and the defendant does not object to this defect before trial, then the objection to the court's personal jurisdiction of the defendant has been waived." Holloway stands for the general proposition that "a defendant can waive his right to have an affidavit free from irregularities and can even waive his right to have any written statement informing him of the accusation against him, if he does not object to those defects at trial." Holloway,501 So.2d at 1139. It is clear to this court that the general and specific holdings of Holloway were neither intended nor designed to embrace the situation presented by the case at hand. In Holloway, the defendant knew exactly what charge she had to defend against and voluntarily appeared in court to contest that charge. Here, even this Court is not certain as to whether Mrs. Thomas has ever been charged. In Holloway, there was a complaint; here, there was not. Here, Mrs. Thomas was arrested, incarcerated, and held until her hearing three hours later. There is absolutely no indication whatsoever that her appearance was voluntary. In Holloway, the defendant was seeking to have her conviction for DUI vacated and the fine she paid refunded. Here, Mrs. Thomas, when she appeared in circuit court, was seeking her liberty from an indefinite term of imprisonment imposed by the district court pursuant to an adjudication of guilty of civil contempt.
Because the juvenile court had no jurisdiction over Mrs. Thomas, her petition for writ of habeas corpus[1] is due to be granted. Therefore, the judgment of the circuit court is reversed.
APPLICATION FOR REHEARING GRANTED; ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED.
TYSON, PATTERSON and McMILLAN, JJ., concur.
TAYLOR, P.J., dissents without opinion.
[1] No objection has been raised to the nature and form by which remedy is sought in this Court. "Contempt proceedings . . . are not reviewable by appeal, but by certiorari, if the contemnor is not in jail, or by habeas corpus, if the contemnor is in jail." Opinion by the Clerk No. 25, 381 So.2d 58, 59-60
(Ala. 1980). Despite the petitioner's characterization of this proceeding as an appeal from the denial of her petition for writ of habeas corpus by the circuit court, we will treat this case as properly presented. Hall v. Hall, 485 So.2d 747, 749
(Ala.Civ.App. 1986); Battle v. Battle, 476 So.2d 109, 111
(Ala.Civ.App. 1985); Graham v. State, 427 So.2d 998, 1006
(Ala.Cr.App. 1983).